**JAN DAVID KAROWSKY**
Attorney at Law
A Professional Corporation
California State Bar Number 53854
716 19th Street, Suite 100
Sacramento, CA 95811-1767
KarowskyLaw@sbcglobal.net
(916) 447-1134
(916) 448-0265 (Fax)

Attorney for Defendant
Benjamin Macias

# UNITED STATES DISTRICT COURT

# IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BENJAMIN MACIAS,<br><br>　　　　　Defendant | Case No. Cr.S-15-125-GEB<br><br>**MOTION TO COMPEL DISCOVERY AND (PROPOSED) ORDER**<br><br>Date: January 12, 2018<br>Time:  2:00 p.m.<br>Judge: Hon. Magistrate Judge<br>　　　　Kendall J. Newman |

　　　　Defendant, Benjamin Macias, submits this discovery motion seeking an order compelling the government to disclose discoverable material, including information that must be disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  Mr. Macias is charged with 21 U.S.C. §§ 846, 814(a)(1) - Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine; 21 U.S.C. §841(a)(1) - Distribution of Cocaine (four counts); 21 U.S.C. §841(a)(1) - Possession with Intent to Distribute Cocaine; 18 U.S.C. § 924(c)(1)(A)- and 924(C)(I)(A)(i) -

Possession of a Firearm and in Relation to a Drug Trafficking Crime; and, 18 U.S.C. § 922(g)(1) - Felon in Possession of a Firearm.

## 1.   REQUEST FOR THE "PARALLEL" INVESTIGATION REPORTS

The Drug Enforcement Agency (DEA) reports received by the defense as discovery state that in September, 2014, after being introduced by a confidential source to the previous co-defendant, in this case, Sergio Ambriz, DEA agent Brian Nehring purchased crystal meth from Ambriz.  There is no mention of Mr. Macias regarding this transaction, nor is he charged with this sale.

The DEA reports document four more hand-to-hand sales by Ambriz to DEA agent Nehring, in December, 2014 and then in February, March, and May 2015.  Mr. Macias is also charged with these sales, apparently based largely on the fact he was observed by the DEA agents in a car with Ambriz at or near the areas in which the sales occurred.  Ambriz claimed he was getting his drugs from his "cousin."  Mr. Macias is not Ambriz's cousin.

Subsequently, on June 9, 2015, Ambriz was arrested at the scene of a fifth, attempted hand-to-hand sale of drugs by Ambriz.  Mr. Macias was allegedly followed by DEA agents from the scene of this attempted sale and an alleged search of his car disclosed cocaine in the trunk and a loaded pistol in the glove box.  Curiously, the discovery provided to the defense to date does not include any report of cocaine or a loaded pistol being found.  The defense requests copies of any such reports.

Clearly, Mr. Macias is charged as an accomplice based on DEA agent Nehring's assumption he was the person supplying the drugs to Ambriz and was allegedly observed with Ambriz at the scenes of the drug sales.

However, through a previous verbal discovery request, the government provided the defense with all recordings of the various contacts between Ambriz and the DEA regarding the drug sales alleged in the Indictment.  The defense had those recordings transcribed.

Through one of the transcripts, the defense learned Ambriz was the subject of a second, simultaneous, and apparently, parallel, DEA investigation in which Ambriz and a number of other suspects, were selling drugs to at least DEA agent Brian Nehring. The "parallel" investigation is not mentioned at all in the initial discovery provided by the government in the instant case. The defense moves to compel production of all documents in the "parallel" case.

In the transcript of the audio recording, attached hereto as Exhibit "A," and incorporated herein by reference, of what appears to be Nehring's drug deal with Ambriz, on December 16, 2014, Agent Nehring clearly confuses what turns out to be Ambriz who calls him, with someone else. The defense originally was going to attach an unredacted copy of the transcript of the relevant December 16, 2014 conversation in which Nehring is confused regarding who is contacting him. However, after a conversation with prosecuting AUSA Paul Hemesath, prior to filing the instant motion, the defense chose to provide him with a copy of the instant motion, for his review.

AUSA Hemesath then spoke to DEA agent Nehring and requested the defense provide a redacted and abbreviated transcript and a redacted argument to the Court so as not to identify individuals whom the DEA indicates did not know they were then being investigated and some people who were never arrested. That is, the DEA requested, for purposes of this motion, that the defense not disclose these names for safety and other concerns. We agreed.

Therefore, in order to demonstrate the point the defense was attempting to make, AUSA Hemesath and the defense hereby agree and stipulate that the names of the other individuals may be redacted from this motion, the attached transcript, and the Exhibit "C," which is the informal discovery demand made by the defense and the actual names may be provided to the Court, as necessary, in camera, at the hearing of this motion, as follows:

At RT 3: 11 – 15 of the Exhibit A, Agent Nehring comments, apparently to his fellow agents, once he realizes he is speaking to Ambriz, that **"… those fuckers Ambriz and** (redacted

person # 1) **are working together.**  This is Ambriz….." (Emphasis added).  Nehring goes on to say, apparently to his colleagues, "… **you know** (redacted person # 2) **there was saying they were working together.  They were both getting the shit from that guy in (inaudible)**…."  (RT 3: 20 – 22, emphasis added).  Nehring also then comments, apparently to his fellow agents, "**Well we were told that that guy him, and this guy were moving stuff for the same guy, this guy** (redacted person # 3)."  (RT 4: 14 – 16, emphasis added).  Also, at RT 2: 17 – 5: 2, it is clear that Nehring references, "(redacted person # 4)," "(redacted person # 1)," "(redacted person # 2)," and "(redacted person # 5)" and Nehring apparently believes Ambriz and (redacted person # 1) are working for "(redacted person # 3)."  Mr. Macias is not mentioned.

It certainly appears Nehring was simultaneously working at least two cases which involved Ambriz and the defense has been provided what appears to be partial discovery on only one of them.  Further evidence that a second, parallel case existed is documented in the discovery that was provided to the defense.  On Bates page one of the discovery, the defense was given in the instant case, reference is made to the first two drug exhibits in the instant case, as Exhibits "10 and 11."  Missing from the Macias discovery are drug exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 12, 13, 15, 17, 18, 21, 22, 23, 24, and 25.  Also missing from the Macias discovery are non- drug exhibits N1, N2, N3, N4, N8, N9, N12, N15, N16, N20, N21, N22, N26, N30, N34, N35, N36, N37, N38, N39, N40 and N41.

If, as Nehring is recorded stating, he believed Ambriz was working this "parallel" case with (redacted person # 1) moving drugs for (redacted person # 3), that is, obtaining drugs for sale from (redacted person # 3), it appears extremely relevant and Brady material, for the government to provide all reports for this other investigation, including but not limited to all reports on "(redacted person # 4)," "(redacted person # 1)," "(redacted person # 2)," "(redacted person # 5)," and "(redacted person # 3)."

With the full discovery for the "parallel" case, and the reports on "(redacted person # 4)," "(redacted person # 1)," "(redacted person # 2)" "(redacted person # 5)," and "(redacted person # 3)," the Macias defense may be able to demonstrate that Ambriz was obtaining all of the drugs he sold to the DEA in both cases from someone other than Mr. Macias – possibly "(redacted person # 3)." If the defense is not provided the full reports of this "parallel" case, the Macias defense will be deprived of potentially exculpatory and possibly exonerating evidence.

In fact, nowhere in the Macias reports does Agent Nehring even mention the phone conversation, referenced above in the transcript, Exhibit A, regarding this second investigation involving Ambriz. Nehring does not say anything in the reports the defense has about his confusion and misunderstanding of who was calling him when he initially spoke to what turned out to be Ambriz regarding the December 16, 2014 sale.

In addition to verbal requests for discovery, the defense has submitted two written discovery requests to the government, dated August 15, 2017 and October 16, 2017, respectively attached hereto and incorporated herein as Exhibits "B" and "C."

In the October 16, 2017 request (Exhibit C), the defense requested what is now the primary subject of the instant motion to compel. In response, the prosecution only provided a four page DEA report which, interestingly, had the same file number as the instant case, authored by Brian Nehring, dated November 12, 2014. This report provided a minimum of relevant information. However, the report did document that a person named "redacted person # 6" had been providing Ambriz with drugs during this time period; that (redacted person # 6) had been at the hand-to-hand sale by Ambriz to Nehring in September, 2014 when Ambriz initially sold drugs to Nehring; that a person named "(redacted person # 1)" had been observed meeting with (redacted person # 6) and (redacted person # 3), both of whom provided a large quantify of drugs to (redacted person # 1); and that it was believed (redacted person # 1) had another drug supply source in San Diego.

The discovery the Macias defense has been provided did not mention that "(redacted person # 6)" had been at the sale of drugs by Ambriz to Nehring in September, 2014.  Nor did any reports the Macias defense has been provided detail that (redacted person # 6) had been providing drugs to Ambriz during the time relevant to all these drug transactions.  The defense requests the prosecution be compelled to produce all relevant information and reports regarding "(redacted person # 6)" and his involvement with Ambriz and others.

The crux of this motion is the government's failure to seek and/or disclose potentially exculpatory and/or exonerating impeachment material.  As a matter of constitutional fairness, the government must disclose all favorable information pertaining to all relevant and material facts. *See United States v. Bagley*, 473 U.S. 667 (1985) (noting that impeachment evidence falls within the *Brady* rule).

### 2. REQUEST FOR DISCOVERY PREVIOUSLY REQUESTED INFORMALLY

Mr. Macias also seeks an order compelling disclosure of all discovery requests contained in the informal, written request dated October 16, 2017 (Exhibit C) and in a previous informal, written request dated August 15, 2017, Exhibit "B," attached hereto and incorporated herein by reference that have not yet been provided.  Although the defense has spoken to the prosecuting AUSA subsequent to the delivery of the four page report previously referenced and made further verbal requests for additional relevant and material reports of the parallel investigation involving Ambriz, not further information has been provided after months of waiting.

### 3. REQUEST FOR CARRIER LOGS FOR AMBRIZ'S PHONE NUMBERS

Further, upon the previous verbal request from the defense, the prosecution has provided to the defense what has been represented as relevant phone records of co-defendant Ambriz's contacts with lead DEA agent Nehring for the entire investigation.  Based on the following, the defense now requests copies of the carrier's complete telephone logs for all of Ambriz's telephone numbers known by the DEA to have been used by him in communications with DEA agent Nehring and/or other DEA agents commencing June, 2014.  The phone records previously

provided by the prosecution show, <u>inter alia,</u> a single communication from Ambriz to Nehring on November 11, 2014 with the next contact not until December 9, 2014.  Contrary to Nehring's assertion that Ambriz was in custody until late November, he actually was out of custody during this period of time.  Based on the transcript of the conversation between Ambriz and Nehring on December 10, 2014, the content of the conversation appears to demonstrate that Ambriz and Nehring had been speaking to each other on a number of occasions between November 11, 2014 and December 10, 2014.  In order to determine whether Nehring and Ambriz had been communicating with each other during the time period in question, the defense needs all carrier telephone logs for all known phone numbers used by Ambriz during this time period, including but not limited to the following telephone numbers:  (831)207-3882; (831)235-9185; (831)210-8352; (916)822-1347; a (530) number; and any and all other numbers known to the DEA.

Interestingly, Ambriz sold drugs to the DEA agent on five separate occasions and tried to sell on a sixth.  The Indictment alleges Ambriz had suffered at least one felony drug conviction of California Health and Safety Code section 11351, possession or purchase for sale of a controlled substance, on March 12, 2013, in Sacramento County.  Ambriz was subject to a mandatory minimum 10 year to life sentence.  Pursuant to his plea agreement, he did not cooperate with the government.  And yet, he was allowed to plead guilty to a phone count and was sentenced to 48 months imprisonment.

### 4. REQUEST FOR RELEVANT PORTIONS OF AMBRIZ'S PSR

The defense further requests to discover relevant portions of the Pre-Sentence Report for Sergio Ambriz. Based on Ambriz's "Motion to Correct Presentence Report," filed as document number 49 on October 28, 2016, attached hereto as Exhibit "D," and incorporated herein by reference,  Ambriz moved, *inter alia,* that "…the third sentence of paragraph 22 be amended to read: 'The defendant stated he obtained the cocaine in order to sell it to the UCA.'" At Ambriz's sentencing, on November 4, 2016, in the sentencing transcript, a copy of which is attached hereto as Exhibit "E" and incorporated herein by reference, at RT 5: 15 – 20, the Court, in reference to the requested amendment to paragraph 22, stated: "You're correct. The change is to the third line

in paragraph 22. After the word "cocaine," the words beginning with "from," to the name there on the next line, the CS is stricken."

In other words, it appears the original version of the PSR read that Ambriz had informed the probation officer that he had obtained the cocaine from a named CS (confidential source). If in fact Ambriz had purchased cocaine from a government confidential source for the purpose of selling it to what turned out to be an UCA, the undercover officer, then there is a high probability that the government knowingly sold cocaine to Ambriz through a confidential source only to turn around and buy it back from him through an undercover officer. If this conduct occurred, it could very well be construed as outrageous governmental conduct and/or possibly entrapment as a matter of law.

The defense needs to review relevant portions of the presentence report for Ambriz in addition to the parallel investigation reports to determine if Ambriz and Macias were set up by the DEA to have drugs sold to Ambriz only to then solicit him to literally buy them back.

Further, DEA agent Nehring's reports and his sworn affidavits have a number of significant errors in them, some possibly bordering on perjury:

a. In the Complaint in this matter, signed under penalty of perjury by Agent Brian Nehring on June 3, 2015, in ¶ 13 thereof, he stated that within days of Ambriz selling drugs to him on September 18, 2014, Ambriz "… was arrested on a probation violation and was incarcerated in Sacramento County until the end of November 2014." In fact, upon subpoenaing Ambriz's custody records from the Sacramento County jail, the defense determined he had only been in custody commencing September 30, 2014 through October 16, 2014, not to "the end of November."

b. Further, in the Complaint, in ¶ 37 thereof, Agent Nehring, wrote, under penalty of perjury, that he personally met with "Macias" on March 13, 2015 at a Starbucks at which time Macias told Nehring that his source was obtaining kilograms of cocaine and that the price would go down if Nehring purchased larger quantities. Mr. Macias never met with nor spoke to Agent Nehring during the entirety of DEA's investigation - nor is there any audio or video recordings or official report of any such

- 8 -

meeting occurring.

c. Additionally, in the Complaint, in ¶ 31 thereof, Agent Nehring wrote, under penalty of perjury, that after the February 10, 2015 transaction, agents surveilled Mr. Macias drive to "**9136** Feather River Way" in Sacramento; subsequently Nehring stated agents observed Macias, among other things, go to a 2004 Ford Taurus with a documented license plate and open the trunk and remove a bag before leaving the residence. Based on these observations, Agent Nehring concluded in his Affidavit in the Complaint that Macias had obtained drugs at this location and probably was storing drugs there. **However,** in the official DEA Form – 6a report by Agent Nehring at Bates page 40, ¶ 19, Agent Nehring provided a different address at which he purportedly made the above described observations, as "**9162** Feather River Way," and in ¶ 20 did not mention any observation of seeing Mr. Macias open the trunk or remove a bag.

In the above examples, Agent Nehring was either mistaken, confused, or lying in his sworn statements in the affidavits for the Complaint and the search warrant.

### I. Legal Framework

#### A. *Brady* Impeachment Material Generally

"Impeachment evidence … as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). The information need not be admissible so long as it "is likely to lead to favorable evidence that would be admissible." *United States v. Sudikoff*, 36 F.Supp.2d 1196, 1200 (C.D. Cal. 1999).

"The prosecution's duty to reveal favorable, material information extends to information that is not in the possession of the individual prosecutor trying the case." *Amado v. Gonzalez*, 758 F.3d 1119, 1134 (9th Cir. 2014). The prosecution's duty also extends to situations where there is a dispute between the parties about the significance of the information. The prosecution should not "confuse[] the weight" to be given *Brady* evidence "with its favorable tendency." *Kyles*, 514 U.S. at 451. In order to qualify, the evidence need only have "some weight" that is

"favorable" to the defense. *Id*. "[T]he Supreme Court has pronounced that if a prosecutor has doubt about certain evidence's exculpatory value, the prosecutor should err on the side of disclosure." *Schledwitz v. United States*, 169 F.3d 1003, 1014 n.4 (6th Cir. 1999) (citing *Kyles*, 514 U.S. at 439; *United States v. Agurs*, 427 U.S. 97, 108 (1976)); *see also United States v. Van Brandy*, 726 F.2d 548, 552 (9th Cir. 1984) ("[t]he government, where doubt exists as to the usefulness of evidence, should resolve such doubts in favor of full disclosure"). Consistent with this principle, the Department of Justice's policies in favor of disclosure go "beyond that which is 'material' to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999)." *See* U.S. Attorney's Manual, 9-5.001.

In order to allow the defense to perform any necessary further investigation based on the information disclosed pursuant to *Brady*, disclosure should be made early. *See generally Mathews v. Eldridge*, 424 U.S. 319 (1976) (calibrating due process based on the interests and burdens at stake). This should be particularly true in a case like this where, depending on the content of the new discovery, significant further defense investigation may be necessary and disclosure imposes no significant burden on the government.

Because trial has not yet been held, the "materiality" prong of *Brady* is inapplicable. *See United States v. Carter*, 313 F.Supp.2d 921, 925 (E.D. Wis. 2004) (agreeing with other courts, including *United States v. Sudikoff*, 36 F.Supp.2d 1196 (C.D. Cal. 1999), *supra*, that "in the pre-trial context, the court should require disclosure of favorable evidence under *Brady* and *Giglio* without attempting to analyze its 'materiality' at trial. The judge cannot know what possible effect certain evidence will have on a trial not yet held."); *see also* U.S. Attorney's Manual, 9-5.001 ("Recognizing that it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence."). However, to the extent that the Court does engage in materiality analysis, "materiality is measured 'in terms of suppressed evidence considered *collectively*, not item by item.'" *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004) (quoting *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (emphasis added)).

**Federal Rule of Criminal Procedure Rule 16 and Local Rule 440**

The government has a duty, upon defendant's request, to provide the requested information which is "material to preparing the defense," to the defendant, under Federal Rule of Criminal Procedure 16(a)(1)€(i). Local Rule 440 imposes the same requirement as the Federal Rule and provides sanctions for violations. The Local Rule requires discovery to be provided within 14 days from the date of arraignment.

Under the Federal Rules of Criminal Procedure, the government must provide discovery of materials if: (i) the item is **material to preparing the defense**; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E)(emphasis added). Rule 16 also provides that "[if] a party fails to comply with this rule, the court may: . . . (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Fed. R. Crim. Proc. § 16(d)(2)(C)-(D). Local Rule ("L.R.") 440(d) states that "[u]pon failure to provide discovery and inspection as required by this Rule, the Government . . . may be subject to sanctions as set forth in L.R. 110." L.R. 110 states that "[f]ailure of counsel...to comply with these Rules . . . may be grounds for imposition by the Court of any and all sanctions authorized by statue or Rule."

The district court has broad discretion to sanction discovery violations. *See United States v. Burgess*, 791 F.2d 676, 681 (9th Cir. 1986); *United States v. Derington*, 229 F.3d 1243 (9th Cir. 2000) (court struck testimony in its entirety as discovery violation sanction.).

**II. Argument**

"The *Brady* standard is familiar: the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013) (quotations omitted). Information regarding the source(s) from which Ambriz obtained the drugs he sold to the DEA in the parallel investigation,

other than from Mr. Macias, could be extremely favorable to Mr. Macias.  Without such information, Mr. Macias will not be able to fairly and fully prepare for trial and cross examine DEA witnesses.  Mr. Macias's due process and Sixth Amendment rights to a fair trial and to confront his accusers will be undermined.  Nor will undersigned counsel be able to assist him effectively.

This evidence requested is not "cumulative or marginal." *Sedaghaty*, 728 F.3d at 900. Rather, it "opens up new avenues for impeachment." *Gonzalez v. Wong*, 667 F.3d 965, 982 (9th Cir. 2011).  The withheld evidence would likely shade jurors' perceptions of Agent Nehring's credibility. *Sedaghaty*, 728 F.3d at 901.  "The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subltle factors as the possible interest or bias of the witness in testifying falsely that a defendant's life or liberty may depend." *Napue v. Illinois*, 360 U.S. 265, 269 (1969).

In summary, as previously detailed herein, the defense seeks the following information be discovered to the defense:

1. Reports of the alleged cocaine found in the trunk of Mr. Macias's automobile and the pistol alleged to have been found in his glove box.
2. All documents in the "parallel" case.
3. The balance of requests not previously discovered in both previously submitted informal, written discovery requests, attached hereto as Exhibits "B" and "C."
4. All reports on "(redacted person # 6)" and his involvement with Ambriz and others.
5. All telephone carrier logs for all of Ambriz's known telephone numbers used throughout the entire investigation, commencing June, 2014.
6. All relevant portions of Ambriz's Pre-Sentence Report.

///
///
///

DATED:  December 21, 2017

Respectfully submitted,

JAN DAVID KAROWSKY
Attorney at Law
A Professional Corporation

/s/ Jan David Karowsky

by

JAN DAVID KAROWSKY
Attorney for Defendant
Benjamin Macias

**JAN DAVID KAROWSKY**
Attorney at Law
A Professional Corporation
California State Bar Number 53854
716 19th Street, Suite 100
Sacramento, CA 95811-1767
KarowskyLaw@sbcglobal.net
(916) 447-1134
(916) 448-0265 (Fax)

Attorney for Defendant
Benjamin Macias

# UNITED STATES DISTRICT COURT

# IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATE OF AMERICA, | Case No. Cr.S-15-125-GEB |
| Plaintiff, | |
| vs. | **MOTION TO COMPEL DISCOVERY AND (PROPOSED) ORDER** |
| BENJAMIN MACIAS, | Date: January 12, 2018 |
| Defendant | Time: 2:00 p.m. |
| | Judge: Hon. Magistrate Judge Kendall J. Newman |

**GOOD CAUSE APPEARING,** after hearing and argument on the defendant's Motion to Compel Discovery, the Court hereby orders the prosecution to provide the defense, forthwith, the following discoverable materials:

1. Reports of the alleged cocaine found in the trunk of Mr. Macias's automobile and the pistol alleged to have been found in his glove box.

2. All documents in the "parallel" case, as documented in said Motion.

3. The balance of requests not previously discovered in both previously submitted informal, written discovery requests, attached hereto as Exhibits "B" and "C."
4. All reports on "(redacted person # 6)" and his involvement with Ambriz and others.
5. All telephone carrier logs for all of Ambriz's known telephone numbers used throughout the entire investigation, commencing June, 2014.
6. All relevant portions of Ambriz's Pre-Sentence Report.

**IT IS SO ORDERED.**

DATED:

　　　　　　　　　　　　　　　　　　　　**KENDAL J. NEWMAN**
　　　　　　　　　　　　　　　　　　　　United States Magistrate-Judge