...

McGREGOR W. SCOTT
United States Attorney
PAUL A. HEMESATH
AMANDA BECK
Assistant United States Attorneys
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>BENJAMIN MACIAS,<br><br>                    Defendant. | CASE NO. 2:15-CR-125 GEB<br><br>BRIEF IN SUPPORT OF DISMISSING JUROR #6 AND INSTALLING ALTERNATE JUROR #1 |

For the reasons set forth below, the government moves the court to excuse Juror #6 for cause, and to install Alternate Juror #1.

**FACTS**

Juror deliberations in *United States v. Benjamin Macias* began at about 1:45 p.m. on November 14, 2018. At about 3:20 p.m., court staff requested that government attorneys come to the courtroom to address a juror note. When both parties were present, court staff provided a note that read, "Juror #6 has safety concerns regarding the location of his residence to the proximity of the AMF bowling location and possible mutual acquaintances in the area." The note was signed by Juror #6 and the foreperson, Juror #9. Its script appeared to have been written by a third juror.

At about 4:00 p.m., after consulting with counsel, the court called Juror #6 to the courtroom to discuss his concerns. In response to the court's initial questioning, Juror #6 said that:

- He had not written the note. However, it had been written at his request and expressed his sentiments.
- He was "really uncomfortable."
- He first realized this "last Thursday," November 8, 2018, the second day of trial.
- Some of the relevant events of the case were "too close to my house – where everything pretty much took place."
- "I know I should have said something earlier, but it was my first time [being a juror]."
- He was "just real nervous" about "having to stay here and actually make a decision."

In response to further court questioning, Juror #6 said that:

- He was not willing to engage in jury deliberations.
- He didn't want to be a juror.
- He was not able to be a juror on this case.
- It was "maybe last Thursday when I really started processing."
- He started believing that could not be a juror "maybe last Thursday."
- At that time, he "didn't know how to go about" alerting the court to his position.
- There were "not really major safety issues. … Just, the area I live in is close to the bowling alley."
- He was "sure" that there were "mutual acquaintances."
- He "didn't feel comfortable."
- He felt that he "was being forced to give a different opinion" in the jury room.
- "I would just really rather all of this be gone."
- "I really shouldn't be here."

In response to a final series of court questions, Juror #6 said that:

- Since last Thursday, he had been "trying to figure out how to be excused."
- "I don't know why I didn't speak up earlier."
- He did recall the court's voir dire questions about whether any potential jurors would have trouble making a decision.

## LEGAL STANDARD

Fed. R. Crim. P. 23(b)(3) enables a district court to dismiss a juror during deliberations for "good cause." The good cause umbrella "embraces all kinds of problems—temporary as well as those of long duration—that may befall a juror during jury deliberations." *Murray v. Laborers Union Local No. 324*, 55 F.3d 1445, 1452 (9th Cir. 1995).

Most relevant to this case, good cause includes a juror's untruthfulness or misconduct, including violations of the court's instructions to the jury. *United States v. Vartanian*, 476 F.3d 1095, 1098–99 (9th Cir. 2007). It includes a juror's unwillingness to follow the law or lying to the court. *United States v. Christensen*, 828 F.3d 763, 806 (9th Cir. 2015). It can include a juror's inability to deliberate impartially. *United States v. Symington*, 195 F.3d 1080, 1085 (9th Cir. 1999).

However, "if the record evidence discloses any *reasonable* possibility that the impetus for a juror's dismissal stems from the juror's views on the merits of the case, the court must not dismiss the juror." *Symington*, 195 F.3d at 1087. In other words, the available evidence must be sufficient to leave the district court "firmly convinced that the impetus for a juror's dismissal is unrelated to [his or her] position on the merits." *Id.* at 1087 n. 5, n. 7.

The decision to excuse a juror is committed to the district court's discretion. *United States v. Egbuniwe,* 969 F.2d 757, 761 (9th Cir.1992). The Ninth Circuit must affirm such a decision unless the appellate court is "left with the definite and firm conviction that the [district] court committed a clear error of judgment in reaching its conclusion after weighing the relevant factors." *Id.* Should a problem with a juror arise after deliberations have commenced, the trial court must determine the circumstances of what transpired, the impact on the jurors, and whether the problem was prejudicial. *Bell v. Uribe*, 748 F.3d 857, 867 (9th Cir. 2014). *See also, United States v. Ross,* 886 F.2d 264, 267 (9th Cir.1989) (Because the district court was in the "best position" to evaluate the jury's ability to deliberate, and the incident clearly was affecting the jury, the court did not abuse its discretion in finding just cause to remove both jurors.)

## ANALYSIS

The government asks the court to excuse Juror #6 for cause and to install Alternate Juror #1. The government bases its request on Juror #6's own reasons for and explanations of his discharge

request. They indicate a lack of candor to the court, his self-professed inability to deliberate, and his admission that he did not follow the Court's instructions. These reasons pre-date the beginning of jury deliberations on November 14, 2018.

Juror #6 told the court that, on the second day of trial – November 8, 2018 – he began to believe that he could not be a juror. He also told the court that, since that day, he has felt "really uncomfortable" about "having to stay here and actually make the decision" and that, therefore, since last Thursday, he has been "trying to figure out how to be excused."

He chose not to notify the court of this development even though he "knew [he] should have said something." He implausibly claimed that he "didn't know how to go about" doing so. He also stated that he did not know why he did not speak up earlier. Such statements indicate either a lack of attention to or a disregard of Initial Instruction No. 6. At the beginning of trial, the court told jurors to "simply give a signed note to the Courtroom Deputy Clerk" if they needed to communicate with the court. Dkt. #190 at 6:17-18.

The credibility of Juror #6 is further undermined by his providing a note that cited "safety concerns" relating to the location of his home and "possible mutual acquaintances." The "safety concerns" his note invoked are, at this point, speculative. Less than two hours later, Juror #6 characterized them as "not major safety concerns, just little ones. … The area I live in is close to the bowling alley." He did not elaborate. In his colloquy, Juror #6 also said that he was "sure" some of these mutual acquaintances existed, but he did not specify with whom they would be mutual, how many there would be, or what their impact on his deliberations might be. This is not credible because such a statement would have required Juror #6 to have made inquiries or otherwise contacted his acquaintances during trial. If he did so, he would be in violation of the court's initial instruction to avoid personal research regarding the case. If he did not, then he would have no basis to be "sure" that mutual acquaintances exist. On these bases, the court may find that Juror #6 was not candid with the court regarding his reasons for not being on the jury. Further, Juror #6 may have had a duty to report any "mutual acquaintances" as soon as he realized they existed. His decision to report them only after jury deliberations began is an independent reason for discharging him.

There is no "reasonable possibility" that Juror #6's dismissal relates to his views on the merits of the case. *Symington*, 195 F.3d at 1087. It is true that, during his court colloquy, Juror #6 made a passing comment that he was "being forced to give a different opinion" in the jury room. However, he did not explain the topic to which his opinion related. He did not explain whether other jurors also shared his view. It, therefore, remains unclear whether his opinion related to the merits of the case or even whether it was a minority view. Further, Juror #6 claimed such interference after only 90 minutes of deliberation; he simultaneously repeated multiple times that he had begun deciding last Thursday – six days before jurors discussed the case – that he could not serve. Thus, Juror #6's realizations about his inability to be a juror preceded any possible jury deliberations by several days. As a result of Juror #6's own words, the court may dismiss him for reasons completely unrelated to his comment that he was feeling "pressured" by other jurors.

Juror #6's unwillingness to deliberate and his lack of candor are similar to the facts in *United States v. Christensen*, 828 F.3d 763 (2015), in which the Ninth Circuit found no error in a district court decision to discharge a juror who would not follow the law and who lied to the court. The *Christensen* district court found, through the questioning of five other jurors, that its Juror #7 made statements expressing disagreement with the wiretap laws; this was the court's basis for finding that Juror #7 would not follow the law. The *Christensen* district court also found that Juror #7 had lied by omission during voir dire, when he did not respond to questions about "any feelings about the particular charges" or any about "knowledge of wiretap laws." *Id.* at 810. Here, the facts favor discharge even more, because the court need not rely on the statements of other jurors. Rather, the court may listen to Juror #6, who reports that he cannot deliberate and that he should have told the court six days ago that he could not deliberate.[1] Furthermore, Juror #6 has self-reported omissions and delays in his reporting of his potential connection with the case, with no reasonable explanation. Juror #6's candor earlier in the trial would have avoided the difficulty of considering these facts after deliberations began.

[1] Unlike in *Christensen*, this problem was not raised by the other members of the jury.

## ANALYSIS

Juror #6 repeatedly told the court that he realized his difficulties with serving on the jury six days before deliberations began, but failed to say anything about his material concerns. These realizations and his lack of candor occurred well before the beginning of deliberations and any possible pressure from other jurors. Accordingly, court should find the bases for Juror #6's dismissal existed well before deliberations began and did not stem from his views on the merits of the case.

Dated:  November 14, 2018

McGREGOR W. SCOTT
United States Attorney

By: /s/ AMANDA BECK
AMANDA BECK
Assistant United States Attorney