1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF CALIFORNIA
2                        --o0o--

3
   UNITED STATES OF AMERICA,      ) Docket No. 15-CR-125
4                                 ) Sacramento, California
                   Plaintiff,     ) February 8, 2019
5                                 ) 9:46 a.m.
            v.                    )
6                                 )
   BENJAMIN MACIAS, ET AL.,       ) Re: Judgment and Sentence
7                                 )
                   Defendants.    )
8

9                  TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE GARLAND E. BURRELL, JR.
10            UNITED STATES SENIOR DISTRICT JUDGE

11  APPEARANCES:

12  For the Plaintiff:      HON. McGREGOR W. SCOTT
                            United States Attorney by
13                          MR. PAUL ANDREW HEMESATH
                            MS. AMANDA BECK
14                          Assistant U.S. Attorneys
                            501 I Street, Suite 10-100
15                          Sacramento, CA 95814

16  For the Defendant:      JAN DAVID KAROWSKY, PC by
                            MR. JAN DAVID KAROWSKY
17                          716 19th Street, Suite 100
                            Sacramento, CA 95811
18

19                  JENNIFER COULTHARD, RMR, CRR
                        Official Court Reporter
20                     501 I Street, Suite 4-200
                        Sacramento, CA 95814
21                      jenrmrcrr2@gmail.com
                           (312)617-9858
22

23        mechanical steno - computer-aided transcription

24

25

 1              SACRAMENTO, CALIFORNIA, FRIDAY, FEBRUARY 8, 2019

 2                            --o0o--

 3       (In open court.)

 4              THE CLERK:  Calling criminal case 15-125, United

 5  States v. Benjamin Macias.

 6              MR. HEMESATH:  Good morning again, Your Honor; Paul

 7  Hemesath and Amanda Beck on behalf of the United States.

 8              THE COURT:  Thank you.

 9              MS. KAROWSKI:  Good morning, Your Honor; Jan Karowsky

10  on behalf of Benjamin Macias, who's present in custody.

11              THE COURT:  All right.  Thank you.  This matter is

12  scheduled for sentencing.  Is there any reason we should not

13  proceed?

14              MS. KAROWSKI:  No reason, Your Honor.

15              THE COURT:  I have read and considered the presentence

16  report, the parties' respective sentencing briefs.

17              Mr. Karowsky, have you read and considered the

18  presentence report and discussed it in detail with Mr. Macias?

19              MS. KAROWSKI:  Yes, Your Honor.

20              THE COURT:  Mr. Macias, have you read the presentence

21  report and discussed it in detail with Mr. Karowsky?

22              MR. MACIAS:  Yes, we did.

23              THE COURT:  Okay.  I need to begin by discussing the

24  objections to the presentence report.  I should tell you -- I'm

25  thinking I should tell you tentatively what my conclusions are

1    concerning the objections.  Would you --

2            MS. KAROWSKI:  That would be fine, Your Honor.  Thank

3    you.

4            THE COURT:  Okay.  The first objection that Mr. Macias

5    makes is to the offense level enhancement in paragraph 34 of

6    the presentence report imposed under Section 3C1.1.  Mr. Macias

7    disagrees with the probation officer's conclusion that that

8    enhancement applies.  He argues, in essence, he engaged in

9    flight -- this is how I understand his argument -- from law

10   enforcement officers --

11           MR. MACIAS:  No.

12           THE COURT:  -- and that he was driving fast; however,

13   his driving was under control.

14           The United States disagrees and provided the video of

15   the flight that was shown to the jury.  And the United States

16   argues the video, in part, the video confirms the probation

17   officer's factual conclusions about Mr. Macias's erratic

18   high-speed and dangerous driving, which supports the ultimate

19   conclusion that Macias's flight recklessly created a

20   substantial risk of death or serious bodily injury.

21           I refreshed my memory concerning that evidence by

22   looking at the disc provided by the United States, which was

23   filed on the public docket.

24           The trial record evinces that Macias fled from law

25   enforcement officers seeking to apprehend him for drug

1   trafficking offenses.

2          Before the subject flight, Macias drove to a strip

3   mall parking lot to conduct a drug trafficking offense.  After

4   his arrival, he correctly realized that numerous undercover law

5   enforcement officers were present for the purpose of arresting

6   him for drug trafficking offenses.

7          I'm going to let the record reflect that Mr. Macias

8   just looked at his lawyer and was denying -- what appeared to

9   be denying what I was saying, and he's in disagreement with

10  what I just said.  That may have a bearing on another issue

11  that is to be discussed later.

12         Mr. Macias then fled that area in his vehicle.  A law

13  enforcement agent and a hovering helicopter observed Macias's

14  flight and followed him until he was subsequently apprehended.

15         Macias entered a highway during his flight and reached

16  the speed of approximately 90 miles an hour, not withstanding

17  the risk this speed posed to other motorists.

18         Further, when other motorists hindered his speed, he

19  made erratic lane changes, moving from the No. 1 lane -- and

20  that is the lane that is used -- supposed to be used to pass

21  other vehicles -- to the No. 3 lane so he could get in front of

22  hindering motorists.  He returned to the No. 1 lane after he

23  passed those motorists using the No. 3 lane, and he engaged in

24  these erratic lane changes, changing maneuvers, at least three

25  times.  No vehicles passed him.

1    Since it is obvious that Macias created a substantial

2    risk of death or serious bodily injury to another person during

3    his flight on the highway, this objection is overruled.

4    I will not say anything about the acceptance of

5    responsibility issue.  I will leave that for argument.

6    Mr. Macias also objects to the two-level enhancement

7    in paragraph 31 of the presentence report, arguing that this

8    enhancement should not be applied.  This enhancement is applied

9    or the enhancement reads, in part, the enhancement should be

10   applied if a weapon was present in connection with the offense

11   unless it is clearly improbable that the weapon was not

12   connected with the offense.

13   Macias contends since he was acquitted by a jury of

14   the weapon or, I should say, firearm charge, which alleged in

15   the indictment that he had a firearm during a drug trafficking

16   crime, that the jury necessarily found that it was clearly

17   improbable that he had a firearm that was connected with the

18   offense.

19   The United States counters that this argument ignores

20   the difference between the phrases in furtherance of the

21   language in the indicted firearm offense and it is in the

22   guidelines as unless it is clearly improbable that the weapon

23   was connected with the offense.  The United States is correct.

24   Paragraph 22 of the presentence report states in part,

25   I'm quoting, "During a search of Macias's vehicle after he was

1   apprehended" on the date he attempted to avoid being caught by

2   law enforcement officers -- I'm adding words to what's there in

3   that paragraph 2 -- "agents found a loaded 9mm Ruger

4   semi-automatic handgun in the glove compartment of the vehicle

5   Macias was driving and 561 gross grams of cocaine concealed in

6   a Lay's Potato Chip bag in the trunk of that vehicle."

7          Macias's argument that it is improbable that this

8   firearm was connected to his offense is belied by this factual

9   record.  This firearm was loaded and was found in the glove

10  compartment of the same vehicle where the elicit drugs were

11  found in the trunk; therefore, it is not clearly improbable

12  that the firearm was unconnected with the drug offense, and

13  this objection is overruled.

14         Sentencing enhancement or manipulation.  Mr. Macias

15  has -- through counsel has made a number of arguments.  He

16  argues that the essence of his argument -- I'm not going to

17  read from what I've written -- the essence of his argument is

18  that the law enforcement officer's undercover activities

19  concerning the sale of elicit drugs was conducted in a manner

20  aimed at having Mr. Macias to sell larger quantities of drugs

21  for the purpose of having his sentence enhanced because the

22  sentence would be higher if a larger quantity of drugs were

23  involved in the sale.

24         Macias virtually argues that the Sentencing

25  Manipulation Doctrine applies whenever an individual opines

1    that a law enforcement officer could have arrested the

2    individual at an earlier time.  However, as the Ninth Circuit

3    states in *Baker*, we decline to adopt a rule that, in effect,

4    would find sentencing manipulation whenever the government,

5    even though it has enough evidence to indict, opts, instead, to

6    wait in favor of continuing its investigation.  Such a rule

7    would unnecessarily and unfairly restrict the discretion and

8    judgment of investigators and prosecutors.  Police must be

9    given leeway to probe the depth and extent of a criminal

10   enterprise to determine whether conspirators exist and to trace

11   deeper into the distribution hierarchy, so this objection is

12   overruled.

13        There are other objections.  There are other

14   objections concerning criminal history calculations.  I agree

15   with what the United States says about those objections on page

16   6 of his sentencing memorandum, lines 2 to 3.  Those objections

17   are not relevant to the accurate calculation of his criminal

18   history points.

19        The United States also states on page 6 that Macias's

20   statements about what really happened in the various prison

21   incidents are not relevant to the sentence requested.  I agree.

22        Then he also has objections to supervised release

23   provisions, certain ones, which I need not discuss at this

24   time.

25        So I've addressed all of the -- I believe all of the

1   objections except for acceptance of responsibility.

2          MS. KAROWSKI:  Yes.

3          THE COURT:  Okay.  You can argue, if you desire.

4          MS. KAROWSKI:  I don't desire.  I'm prepared to submit

5   on our written pleadings, Your Honor.

6          THE COURT:  Okay.

7          Mr. Macias, under the law, I am required to give you

8   the opportunity to speak to me before I make a sentencing

9   decision.  Just because I'm giving you this opportunity doesn't

10  mean you have to say anything, but I am absolutely required to

11  give it to you.  If I don't give it to you, I get reversed by

12  the higher court.

13         Do you desire to say anything before I make a

14  decision?

15         MR. MACIAS:  No, thank you, Your Honor.  I'll submit

16  without prejudice.

17         THE COURT:  Okay.  How about the United States, do you

18  desire to say anything before I make a decision?

19         MR. HEMESATH:  Well, a couple of things, Your Honor.

20         One quick housekeeping matter.  I believe that there's

21  a typo on page 25 of the presentence report that we just

22  noticed.  At the very top of the page, it indicates that the

23  total offense level is 26.  On other pages and contextually

24  throughout the document it's clear that the calculation is 28.

25  And that's confirmed on page 10 of the report where the total

1    offense level is listed as 28 and also with regard to the

2    guidelines provisions on 25 it indicates 130 to 162 months,

3    which, at a criminal history 5, does correlate to an offense

4    level 28.

5            THE COURT:  Okay.  That appears to be an error that

6    should be changed on page 25.  I didn't see that.  So that will

7    be changed.

8            MR. HEMESATH:  And then, Your Honor indicated that the

9    Court would wait to talk about acceptance of responsibility.

10   So if this is the time to talk about that, what the government

11   would argue is that as of this moment, there is simply no

12   evidence of the sincere contrition that the Ninth Circuit would

13   expect and require for the application of that minus 2 level

14   decrease that the defense is requesting.

15           The Ninth Circuit does give great deference to the

16   District Court in making this determination.  There are a

17   number of factors, but the one that comes up most prominently

18   is whether the defendant has expressed this sincere contrition.

19   And the government asks the Court to make a finding with regard

20   to that for that purpose.  Otherwise, the government stands by

21   its recommendation for the mid-range sentence of 146 months

22   chiefly because, as set forth in the sentencing memorandum,

23   this was serious conduct.  It is conduct that has apparently

24   happened before.

25           Mr. Macias apparently has no respect for the law.  He

1    was on pretrial release for similar charges.  That pretrial

2    release conduct was not accounted for in the guidelines because

3    it's not a criminal history point for him or against him.  The

4    Court can take that into consideration as part of his history

5    and characteristics.  He doesn't even have to admit that he

6    actually was guilty of that conduct.

7         I think for the Court's consideration that he was on

8    pretrial release for that conduct and, therefore, was on very

9    extreme clear notice that this is illegal, that this is not

10   something that he should do, that he's on bail pending those

11   types of charges yet still engaged in this conduct is a clear

12   indication that Mr. Macias has no respect for the law.

13        And for all of those reasons and for all of the facts

14   that were displayed on trial before the Court, the government

15   requests a sentence in consonance with the pretrial services

16   or, I'm sorry, the probation report of 146 months.

17        THE COURT:  What precise finding does the United

18   States propose in connection with acceptance of responsibility?

19   What's the wording of the finding you propose?

20        MR. HEMESATH:  Your Honor, there's no precise test.

21   There are no magic words that the Ninth Circuit requires,

22   except I would ask the Court to determine whether there has

23   been appropriate contrition in this case, whether there's

24   evidence of sincerity of contrition and admission of the

25   underlying conduct.  Otherwise, the Ninth Circuit has

1    considered whether or not there was a confession, whether or

2    not there was cooperation with regard to both of those things.

3    I don't see evidence of either of those two things.

4         The Ninth Circuit has also considered the immediacy of

5    the cooperation.  And where there's no cooperation, certainly

6    there's no immediacy.

7         The Ninth Circuit also considers conduct at trial.

8    And so as a totality, I believe it would also be appropriate

9    for the Court to make a finding that the evidence as a whole

10   does not support the defendant's acceptance of responsibility

11   in this case.

12        THE COURT:  But earlier you used two words.  You

13   indicated that those two words were essential to a finding.

14   And the two words are "sincere attrition."  And I thought you

15   were telling me or asking me to make a concrete finding that

16   includes those two words.  So when I asked you the question I

17   asked you, I was seeking to have you to propose the language.

18        MR. HEMESATH:  Oh.  Well --

19        THE COURT:  I don't think I should make a finding -- I

20   should rephrase that.

21        I would prefer not to make a finding out of the

22   presence of the defendant.  Typically, findings are in the

23   presentence report.  I have made the tentative ruling I gave,

24   which I have -- I don't -- I have not yet adopted, and I didn't

25   say anything about the acceptance of responsibility.  I'm going

1    to look for it now.  And maybe I should look for it first.  In

2    connection with the acceptance of responsibility issue, the

3    tentative ruling I have sets forth what I believe is to be the

4    argument of Mr. Macias and the argument -- then the argument of

5    the United States.

6           And this is what I state after those arguments:

7    Macias has the burden of proving, by a preponderance of the

8    evidence, that he is entitled to a reduction for acceptance of

9    responsibility under section 3E1.1(a).  He has not sustained

10   this burden of proof.

11          It is understood that conviction by trial does not

12   automatically preclude Macias from consideration of the offense

13   levels reductions -- reduction under 3E1(a).  And I quote from

14   the note in the guidelines:  "A determination whether a

15   defendant has accepted responsibility will be based primarily

16   upon pretrial statements and conduct."

17          As stated in paragraph 34 of the presentence report,

18   begin quote, "There is no indication in pretrial proceedings,"

19   and then I modify what the probation officer has stated by

20   inserting the word "evincing."

21          I'll read it again.  There was no indication in

22   pretrial proceedings evincing that defendant was willing to

23   stipulate to his guilt in Counts 1 through 7 and 10; therefore,

24   given that defendant denied his guilt and demanded a jury trial

25   in this matter, a reduction for acceptance of responsibility

 1    under 3E1.1 is not warranted.

 2          Then I have the conclusion:  Therefore, these

 3    objections are overruled.  However -- I think before the

 4    conclusion I'm thinking about adding this:  The defendant's

 5    demeanor during a portion of the sentencing proceeding also

 6    evinces he denies responsibility for his flight from law

 7    enforcement officers.  And then I say these objections are

 8    overruled.  I don't know where sincere attrition fits in that.

 9          MR. HEMESATH:  Well, Your Honor, it's true that this

10    is -- the timing of what the Court should consider couldn't

11    rely completely on the PSR because I believe that what the

12    Ninth Circuit considers in this case, in addition to what could

13    historically be considered by the final PSR, which was authored

14    a couple of weeks ago, also includes what happened at

15    sentencing.

16          The Ninth Circuit decisions in these cases consider

17    what was said at sentencing and what the defendant said at

18    sentencing.  And therefore, that's part of the reason why, Your

19    Honor, in the sentencing memorandum that the government filed

20    that we simply say that there's not enough evidence.  We

21    haven't heard -- from the government's perspective, the

22    government's never heard sincere or any kind of admission from

23    the defendant.  And so while the pretrial historical facts are

24    absolutely relevant to Your Honor's decision, what is also at

25    the heart of many of these Ninth Circuit cases is the term

1    "sincere contrition."  And as far as the government is

2    concerned, there is no evidence of sincere contrition in this

3    case, and the government would ask the Court to make such a

4    finding.

5            THE COURT:  The government has asked me to add to what

6    I stated, I have already written the sentence, "There is no

7    evidence of sincere attrition in this case."  Do you have a

8    response?

9            MS. KAROWSKI:  Your Honor, we'll stand on our

10   pleadings.  Mr. -- I wrote on behalf of Mr. Macias that he had

11   admitted to me that he was guilty of the drug trafficking

12   offenses.  I did a memorandum to that effect.  My file included

13   a redacted copy of that as part of our sentencing memorandum.

14   It appeared to me to be sincere and contrite.  But beyond that,

15   I've written that in the sentencing memorandum, and we're

16   prepared to submit on that basis.

17           THE COURT:  Okay.  The government?

18           MR. HEMESATH:  So long as the Court is considering

19   those facts and the government acknowledges that there has been

20   some -- apparently some statement from defendant to defense

21   counsel about his contrite admission, I don't know, I can't say

22   whether it's actually contrite or not, but I believe that the

23   Court should make that finding.  And we have the defendant

24   before us to determine whether or not that exists factually at

25   this hearing or not.

1          THE COURT:  I don't know what you mean when you make

2    the statement "We have the defendant before us."  I don't know

3    what that is supposed to indicate.

4          MR. HEMESATH:  It indicates, Your Honor, that -- it

5    emphasizes that the Court gave the defendant the opportunity to

6    allocute.  Nothing more.

7          THE COURT:  Well, I can't consider punishing him if he

8    doesn't opt to speak.

9          MR. HEMESATH:  Yes.  Absolutely.

10          THE COURT:  I can't do that.

11          MR. HEMESATH:  The government agrees with that.  But

12    the government -- but the Court can consider the absence of

13    evidence, and that is what the government suggests is that

14    there is an absence of evidence of sincere contrition.

15          THE COURT:  Is the government asking for this

16    following finding:  Macias has the burden of proving by a

17    preponderance of the evidence that he is entitled to a

18    reduction for acceptance of responsibility under section

19    3E1.1(a) by demonstrating the degree of sincere attrition [sic]

20    expected to be manifested under this guideline?

21          MR. HEMESATH:  And just excuse me, Your Honor.  It may

22    be my ears.  I'm hearing the Court say "attrition" as opposed

23    to "contrition."

24          THE COURT:  You're correct.  Thank you.

25          MR. HEMESATH:  I hesitate, Your Honor --

1    THE COURT:  Well --

2    MR. HEMESATH:  -- because --

3    THE COURT:  I need -- I have other cases that are

4  causing me to focus on findings.  I think it behooves parties

5  to focus on findings.  And if a party believes that a finding

6  in the presentence report should be different or augmented, a

7  party should propose concrete language concerning the desired

8  finding.

9    MR. HEMESATH:  I have seen nowhere in the Ninth

10  Circuit decisions, Your Honor, whether or not there is a

11  particular burden on a particular party with regard to

12  acceptance of responsibility.  To read directly from at least

13  one of the decisions, "A District Court's determination of

14  whether a defendant has accepted responsibility is a factual

15  determination we review for clear error.  In reviewing a

16  District Court's determination as to defendant's acceptance of

17  responsibility, we must afford the District Court great

18  deference, because of its unique position, to evaluate a

19  defendant's acceptance of responsibility."

20      What I don't see there, Your Honor, is the idea that

21  it's a preponderance or not.  Now, that may be covered in

22  general in other sentencing law with regard to when someone

23  makes a proposition whether or not that is sufficient and who

24  has the burden and that sort of thing and that -- and so that's

25  the reason why I hesitate, Your Honor.

1          I think that the Court could simply say that there is

2   no -- well, and it depends on your determination --

3          THE COURT:  I'm going to interrupt you.

4          You're indicating that the circuit will be guessing at

5   what standard I use when I make a determination and that I

6   shouldn't say preponderance because that may not be the

7   standard.  I'm inclined to take a 15-minute recess so that I

8   can ponder this issue.  Court's in recess for 15 minutes.

9          (Recess at 10:27 a.m. to 10:51 a.m.)

10          THE COURT:  Let the record reflect that the same

11   parties are in front of me.  Is there any further input before

12   I make a decision on the objections?

13          MR. HEMESATH:  Yes, Your Honor.  During the break, the

14   government did a little additional research and has some

15   citations for the Court about the burden in this case.  In

16   general, the Court would cite to the *United States v. Sanchez*,

17   908 F.2d 1443 out of the Ninth Circuit that the defendant has

18   the burden of proving that he's entitled to a downward

19   adjustment based on his role in the offense by a preponderance

20   of the evidence.  That's the general proposition.

21          And then more specifically to this matter, the United

22   States would point out that the Ninth Circuit has also ruled

23   that under the guidelines, a defendant is entitled to a

24   downward adjustment if he clearly accepts responsibility for

25   all of his relevant conduct.

1          And that citation, Your Honor, is the *United States v.*

2   *Wilson*, 392 F.3d 1055 from 2004, also the Ninth Circuit.  And

3   so based on those two citations, Your Honor, it is the

4   government's position that the defendant has not met that

5   standard identified, he's not clearly accepted responsibility,

6   there has been no sincere contrition in this matter and,

7   therefore, the 2-point reduction is not deserved.

8          THE COURT:  The defendant cites a case from the Sixth

9   Circuit that also uses the preponderance standard and that

10  citation by the defendant is on page 5, lines 13 to 16 of the

11  defendant's sentencing memorandum and motion to correct the

12  PSR.  There's another Sixth Circuit case that seems to cite a

13  different standard, the same one that's cited by the Ninth

14  Circuit.  I'm not sure that I should use the word "standard."

15  I should probably say "language" in the 101 Federal Appendix

16  177, I believe, or maybe it's 72, the sixth circuit, which it

17  used the preponderance standard, uses language that the Ninth

18  Circuit uses in another case called *Johnson*.  And in Johnson at

19  581 F.3d 994, 1000-01, it's a 2009 Ninth Circuit case, it

20  states in part under the Guidelines, "A defendant who clearly

21  demonstrates acceptance of responsibility for his offense is

22  entitled to a two-level decrease in the offense level."

23          The -- a comment on note 1 to the applicable advisory

24  guideline section has a number of factors to be considered and

25  the comment says "that include but are not limited to the

1   following."  And one of those listed in subsection A states,

2   "However, the defendant, who falsely denies or frivolously

3   contests relevant conduct that the Court determines to be true,

4   has acted in a manner inconsistent with acceptance of

5   responsibility."

6        Mr. Macias has not clearly demonstrated acceptance of

7   responsibility for the relevant conduct involved in his

8   offenses.  He has also engaged in communication and conduct,

9   and by that I'm referencing demeanor and expressions that

10  convey that he frivolously contests relevant conduct that the

11  Court determines to be true, and he has acted in a manner

12  inconsistent with acceptance of responsibility.  Therefore, I

13  adopt the tentative rulings I issued earlier on the objections,

14  and I also rule that he has not accepted responsibility.  I

15  will issue a written ruling later.  Therefore, I adopt the

16  findings in the presentence report that are consistent with my

17  rulings, and the offense level is 28, criminal history category

18  Roman Numeral V, the advisory guideline imprisonment range is

19  130 to 162 months.

20       Mr. Karowsky, do you desire to say anything before I

21  make a decision?

22       MS. KAROWSKI:  No.  Thank you, Your Honor.  We'll

23  submit on the pleadings and -- that we've previously filed.

24       THE COURT:  Does the United States desire to say

25  anything before I make a decision?

1          MR. HEMESATH:  No, Your Honor.  Submitted.

2          THE COURT:  What the -- what the prosecutor summarizes

3     about sentencing in reference to where, within the advisory

4     guidelines, a sentence should be imposed and other 3553(a)

5     factors, I have the discretion under 3553(a) to vary downwardly

6     from the advisory guideline range.  But what the government

7     states really sums up what's going on here, what happened and

8     what's in front of me.

9          The United States says in its sentencing memorandum

10    that Mr. Macias's continued possession of firearms and

11    ammunition is troubling and dangerous to the community.  His

12    access to large amounts of cocaine leaves open many questions

13    as to his activities outside of the facts exposed in this

14    trial.

15         These offenses were committed while on pretrial

16    release for similar drug and gun charges and show that he has

17    no respect for the law and appears to be someone who will not

18    stop committing such crimes.

19         He has a history and characteristics of a person

20    engaged in serious gun and drug trafficking offenses, and

21    there's a need under section 3553(a) to impose a sentence that

22    affords adequate deterrence to future conduct and protects the

23    public from further crimes of the defendant.  And the probation

24    officer's recommendation is the same as the United States', as

25    far as the sentence to be imposed, and I'm going to follow it.

1        Pursuant to the Sentencing Reform Act of 1984, it is

2   the judgment of the Court that the defendant is hereby

3   committed to the custody of the Bureau of Prisons to be

4   imprisoned for a term of 146 months on each of Counts 1, 4

5   through 7 and 8 and a term of 120 months on Count 10, all to be

6   served concurrently to each other for a total term of

7   imprisonment of 146 months.

8        The defendant shall pay a special assessment of $700,

9   payment to begin immediately.  No fine is imposed because he

10  lacks the ability to pay a fine.

11       Upon release from imprisonment, the defendant shall be

12  placed on supervised release for a term of 60 months on Counts

13  1 and 8, 36 months on Counts 4 through 7 and 10, all to be

14  served concurrently to each other for a total term of 60

15  months.

16       Within 72 hours of release from the custody of the

17  Bureau of Prisons, the defendant shall report, in person, to

18  the probation office in the district to which he is released.

19       While on supervised release, the defendant shall not

20  commit another federal, state or local crime, shall not

21  illegally possess controlled substances, shall cooperate in the

22  collection of DNA as directed by the probation officer and

23  shall comply with the standard conditions which have been

24  recommended by the United States Sentencing Commission, which I

25  adopt.

1        Further, the defendant shall remain -- refrain from

2   any unlawful use of a controlled substance and shall submit to

3   one drug test within 15 days of release from imprisonment and

4   at least two periodic drug tests thereafter, not to exceed four

5   drug tests per month.

6        The conditions of supervised release have been

7   challenged.  Do I need to address that challenge before I

8   impose them?

9        MR. HEMESATH:  I think that the government would ask

10  the Court to make a determination that there is no basis for

11  such a modification of the proposed terms of supervised

12  release.

13       MS. KAROWSKI:  I'll submit it, Your Honor.

14       THE COURT:  I agree with the probation officer's

15  special conditions of supervised release set forth on page 27

16  of the presentence report and impose all of those listed as

17  special conditions.

18       Mr. Macias, you have a right to appeal from this

19  judgment.  If you elect to appeal, you must file a written

20  notice of appeal with the Clerk of this Court within 14 days

21  from the entry of this judgment.  If you can not afford the

22  costs of an appeal, you will be permitted to proceed in forma

23  pauperis.

24       If you cannot afford counsel, one will be appointed to

25  represent you.  If the United States desires to appeal in this

1    court, it must file a notice of appeal within 30 days of the

2    entry of this judgment.

3           Anything further to cover?

4           MS. KAROWSKI:  Yes, please, Your Honor.  In that

5    regard, I've been in touch with the Federal Defender's Office.

6    They have located an attorney to do the appeal.  I'm going --

7    they've asked me to file a substitution of attorneys.  I will

8    be doing that either today or Monday so that that attorney,

9    pursuant to the Ninth Circuit's approach, can handle the appeal

10   rather than me handling the appeal, which would be completely

11   inappropriate.

12         And furthermore, Mr. Macias is asking to -- a judicial

13   recommendation for Terminal Island, please --

14         THE COURT:  Okay.

15         MS. KAROWSKI:  -- or at least in California.  I think

16   that's probably more appropriately broad.

17         THE COURT:  Is that his -- is his preference Terminal

18   Island or --

19         MR. MACIAS:  My preference is home.

20         MS. KAROWSKI:  Yeah.  If the Court could, but I

21   think --

22         MR. MACIAS:  I'm just being contrite.

23         MS. KAROWSKI:  I think that California is probably

24   more appropriate, Your Honor.

25         THE COURT:  All right.  I want to look at -- I'm going

1    to make that recommendation.  I mean the one about California,

2    not home.

3              MR. MACIAS:  Don't let the government mislead you.

4              MS. KAROWSKI:  Okay.  That's enough.

5              MR. MACIAS:  I'll be back.  You know that.

6              THE COURT:  I have a -- I have a question for defense

7    counsel.  I see nothing in the presentence report concerning

8    his last employment.  Should -- I mean, is he interested -- I'm

9    not asking you to ask him this in my earshot.  You can whisper

10   to him.

11             MS. KAROWSKI:  Sure.

12             THE COURT:  Is he interested in vocational training

13   while he's in prison?

14             MS. KAROWSKI:  Good question.  May I have a moment?

15             THE COURT:  All right.  Sure.

16             MS. KAROWSKI:  Your Honor, I think, you know, he's

17   done some community college work and I think he's interested,

18   as he's just indicated to me, more in higher education than

19   vocational education.

20             THE COURT:  Okay.  I recommend that the defendant be

21   incarcerated at an institution in California, but only insofar

22   as this recommendation accords with the security classification

23   and space availability of the Bureau of Prisons.  Anything

24   further?

25             MS. KAROWSKI:  One last thing.  Mr. Macias just

1    whispered to me that he would be interested in a recommendation

2    to RDAP -- I know there was some discussion in there -- if the

3    Court's willing to make that recommendation, let the Bureau of

4    Prisons decide the applicability.

5         THE COURT:  You said -- you noted there's some

6    discussion in there.  I missed that.  Where?

7         MS. KAROWSKI:  I think -- I think that there was an

8    issue of whether or not he was -- used drugs.  There is no

9    question he has used drugs.  And I don't recall precisely where

10   the probation officer discussed that, but we're asking for a

11   judicial recommendation for RDAP and then let the Bureau of

12   Prisons determine whether that is appropriate.

13        MR. HEMESATH:  Paragraph 76 of the presentence report

14   indicates some denials of a problem.

15        MS. KAROWSKI:  Actually, it says in there that he

16   would not be opposed to participating in RDAP, which, in

17   essence, we're asking to interpret that he would ask to

18   participate in RDAP.

19        MR. HEMESATH:  The government doesn't oppose that.

20        THE COURT:  Okay.  I recommend that the defendant be

21   allowed to participate in the Bureau of Prisons RDAP program,

22   but this recommendation is only made insofar as it is

23   consistent with the policies of the Bureau of Prisons.

24        Anything further?

25        MR. HEMESATH:  No, Your Honor.

1          MS. KAROWSKI:  No.  Thank you, Your Honor.

2          THE COURT:  It's adjourned.

3          MS. KAROWSKI:  Thank you.

4     (Concluded at 11:13 a.m.)

5

6                    C E R T I F I C A T E

7

8     I certify that the foregoing is a true and correct

9  transcript of the record of proceedings in the above-entitled

10  matter.

11

12  */s/ JENNIFER L. COULTHARD*            April 11, 2019

13                                            DATE

14  JENNIFER L. COULTHARD, RMR, CRR
    Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25