JOHN BALAZS, Bar No. 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
Fax: (916) 557-1118
john@balazslaw.com

Attorney for Defendant
BENJAMIN MACIAS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN MACIAS,<br><br>Defendant. | No. 2:15-CR-0125-KJM<br><br>**Supplemental Brief in Support of Defendant Benjamin Macias's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) (COVID-19)**<br><br>Hon. Kimberly J. Mueller |

# TABLE OF CONTENTS

I. Introduction .......... …………………………………………… 1

II. The COVID-19 outbreak at the Lompoc prison complex, Macias's high-risk medical conditions, and all the circumstances of his case warrant a sentence reduction to time served under 18 U.S.C. § 3582(c)(1)(A)........................................................................ 2

    A. Procedural Background ……………………………….. 2

    B. 18 U.S.C. § 3582(c)(1)(A)(i) gives the Court authority to reduce Macias's sentence of imprisonment for "extraordinary and compelling reasons."…………………… 3

    C. Macias has satisfied the "exhaustion" requirement in 18 U.S.C. § 3582(c)(1)(A)...……………… …………………… 4

    D. The Court has authority to find extraordinary and compelling reasons other than those expressly identified in the commentary to U.S.S.G. § 1B1.13………………………… 4

    E. COVID-19 and its deadly outbreak at Lompoc prison constitute an unprecedented health emergency that presents a serious risk of severe illness or death to vulnerable prisoners like Macias………………………….. 8

    F. Courts responding to the Coronavirus pandemic have recognized the critical importance of reducing incarceration. ………………………………….................... 12

    G. Reducing Macias's sentence to time served is consistent with all the sentencing factors set forth in 18 U.S.C. § 3553(a) given his high-risk medical factors and the spread of COVID-19 at the Lompoc prison complex...………………… 13

III. Conclusion ……………………………………………………… 15

# TABLE OF AUTHORITES

**<u>CASES</u>**

*United States v. Booker,* No. 19-3218, 2020 U.S. App. Lexis 30605 (2d Cir. Sept. 25, 2020) .................................................................. 6

*United States v. Bradley,* No. 2:14-CR-0293-KJM, 2020 U.S. Dist. Lexis 119962 (E.D. Cal. July 7, 2020) ............................................... 11

*United States v. Brown,* 411 F. Supp.3d 446, 449-50 (S.D. Iowa 2019)... 5

*United States v. Cantu,* No. No. 1:05-CR-458-1, 2019 WL 2498923 (S.D. Tex. June 17, 2019)…………………………………………… 8

*United States v. Colvin,* 2020 U.S. Dist. Lexis 57962 (D. Conn. Apr. 2, 2020)  12

*United States v. Goins,* No. 11-CR-20376, 2020 U.S. Dist. Lexis 100358 (E.D. Mich. June 9, 2020) ........................................................ 11

*United States v. Gorai,* No. 2:18-CR-220-JCM, 2020 WL 1975372 (D. Nev. Apr. 24, 2020) ................................................................ 11

*United States v. Haney,* No. 19-CR-0541 (JSR), 2020 U.S. Dist. Lexis 63971 (S.D. N.Y. Apr. 13, 2020)……………………………….. 4

*United States v. Harris,* No. 19-CR-0356-RDM (D. D.C. Mar. 26, 2020)  12

*United States v. Hatcher,* No. 92-CR-0001-CRB, 2020 U.S. Dist. Lexis 161504 (N.D. Cal. Sept. 3, 2020) ............................................. 9

*United States v. Head,* No. 2:08-CR-0093-KJM, 2020 U.S. Dist. Lexis 104170 (E.D. Cal. June 15, 2020) ............................................ 9-10

*United States v. Liew,* No. 11-CR-00573-JSW, 2020 U.S. Dist. Lexis 10415 (N.D. Cal. June 15, 2020) ............................................... 9

*United States v. Maumau,* No. 2:08-CR-0758-TC-11, 2020 WL 806121 (D. Utah Feb. 18, 2020) …………………………………………. 6

*United States v. Mondaca,* No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) …………………………………………. 5

*United States v. Norris,* No. 3:18-CR-0243, 2020 U.S. Dist. Lexis 70219 (D. Conn. Apr. 16, 2020) ........................................................... 11

*United States v. Redd,* No. 1:97-CR-00006-AJT, 2020 WL 1248493, (E.D. Va. Mar. 16, 2020)……………………………………….. 4, 5

*United States v. Robinson,* No. 18-cr-00597-RS-1, 2020 U.S. Dist. Lexis 73575 (N.D. Cal. Apr. 27, 2020) …………… 2, 8

*United States v. Schaffer,* No. 13-CR-0220-MMC, 2020 U.S. Dist. Lexis 110757 (N.D. Cal. June 24, 2020) ............................................. 9

*United States v. Schweder,* No. 2:11-CR-0449-KJM, 2020 U.S. Dist. Lexis 161708 (E.D. Cal. Sept. 3, 2020) .................................................................. 9

*United States v. Seals,* No. 13-CR-0653-SOM, 2020 U.S. Dist. Lexis 114885 (D. Haw. July 1, 2020) .................................................................. 9

*United States v. Shehee,* No. 4:18-CR-6005-SMJ, 2020 U.S. Dist. Lexis 16208 (E.D. Wash. Sept. 1, 2020) ............................................................ 9

*United States v. Stacker,* No. 6:17-CR-0007-AA, 2020 U.S. Dist. Lexis 120144 (D. Or. July 9, 2020) ...................................................................... 9

*United States v. Stephens,* No. 15-CR-0095-AJN, 2020 WL 1295155 (S.D. N.Y. Mar. 19, 2020) ............................................................................ 13

*United States v. Trent,* No. 16-CR-00178-CRB, 2020 U.S. Dist. Lexis 62790 (N.D. Cal. Apr. 9, 2020) ..................................................................... 13

*United States v. Van Praagh,* No. 1:14-CR-0189-PAC, 2020 U.S. Dist. Lexis 121570 (S.D. N.Y. July 10, 2020) ................................................. 9

*United States v. Wen,* No. 6:17-CR-6173 EAW, 2020 U.S. Dist. Lexis 64395 (W.D. N.Y. Apr. 13, 2020) ................................................................ 11

*United States v. White,* No. 13-CR-20653, 2020 U.S. Dist. Lexis 88542 (E.D. Mich. May 20, 2020) ........................................................................ 12

*United States v. Zukerman,* No. 16 Cr. 194 (AT), 2020 U.S. Dist. Lexis 59588 (S.D. N.Y. Apr. 3, 2020) ………………………………………… 13

**STATUTES**

18 U.S.C. § 3553(a) …………………………………………………….. passim

18 U.S.C. § 3582(c)(1)(A)………………………………………………….. passim

18 U.S.C. § 922(g)(1) ……………………………………………………. 2

28 U.S.C. § 994(t) …………………………………………………. 4

First Sep Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, (Dec. 21, 2018)……………………………………………………… 3

**OTHER AUTHORITIES**

Black Law's Dictionary (11th ed. 2019) …………………………….. 6

Joseph A. Bick, *Infection Control in Jails and Prisons,* 45 Clinical Infectious Diseases 1047 (2007)…………………………………… 7

Keri Balinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband,* ABA Journal (Mar. 13, 2020)  7

U.S.S.G. § 1B1.13 ………………………………………………………….. 5, 6, 14

JOHN BALAZS, Bar No. 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
Fax: (916) 557-1118
john@balazslaw.com

Attorney for Defendant
BENJAMIN MACIAS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BENJAMIN MACIAS,<br><br>Defendant. | No. 2:15-CR-0125-KJM<br><br>**Supplemental Brief in Support of Defendant Benjamin Macias's Motion to Reduce Sentence Under 18 U.S.C. § 3582(c)(1)(A)(i) (COVID-19)**<br><br>Hon. Kimberly J. Mueller |

### I. Introduction

Defendant Benjamin Macias has filed a pro se motion to reduce sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i) for "extraordinary and compelling circumstances" in light of the COVID-19 pandemic, its outbreak at the Lompoc prison complex, and all the sentencing factors set forth in 18 U.S.C. § 3553(a). Docket 268. This Brief supplements Macias's pro se motion and adds his 2019-20 BOP medical records (Exhibit 7, under seal) and other exhibits.

Macias, 42, is obese and suffers from hypertension and asthma. These conditions put him at increased risk of severe complications from COVID-19. Macias has a viable release plan and has served over five years in actual custody on

his cocaine and firearm offenses. At this point, he poses little risk of danger to the community while on supervised release. Macias is incarcerated at USP Lompoc, a prison that is the midst of a deadly COVID-19 outbreak. Exhibit 8. In these circumstances, a sentence reduction to time served, with an additional term of home confinement as a condition of supervised release will greatly reduce the risk that Macias suffers from serious complications from COVID-19 and is consistent with all the sentencing factors set forth in 18 U.S.C. § 3553(a).

**II.   The COVID-19 outbreak at the Lompoc prison complex, Macias's high-risk medical conditions, and all the circumstances in his case warrant a sentence reduction to time served under 18 U.S.C. § 3582(c)(1)(A).**

  **A.   Procedural Background**

Defendant Benjamin Macias was found guilty by jury trial of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (count 1), four counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (counts 4-7), possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (count 8), and being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count 10).

On February 8, 2019, U.S. District Judge Garland E. Burrell, Jr., sentenced Macias to 146 months imprisonment and 60 months supervised release. In a 2-1 Memorandum Decision filed April 29, 2020, the Ninth Circuit denied Macias's appeal. *United States v. Macias,* No. 19-10054 (9th Cir. Apr. 29, 2020) (docket 262).

Macias is currently serving his sentence at USP Lompoc, California. The Lompoc prison complex is in the midst of large outbreak of COVID-19, which, "according to some, [is] among the worst in the nation." *United States v. Robinson,* No. 18-cr-00597-RS-1, 2020 U.S. Dist. Lexis 73575, at *3 (N.D. Cal. Apr. 27, 2020) (quoting LA Times, 4/16/20, attached as Exhibit 8). Four inmates have died at the Lompoc prison complex from COVID-19. The prison is still on modified

lockdown. According to the BOP's website, Macias's expected release date is October 19, 2025.

### B. 18 U.S.C. § 3582(c)(1)(A)(i) gives the Court authority to reduce Macias's sentence of imprisonment for "extraordinary and compelling reasons."

18 U.S.C. § 3582(c)(1)(A)(i) grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). The statute provides:

> (1) in any case--
>
> (A) *the court*, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, *may reduce the term of imprisonment* (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), *after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--*
>
> *(i) extraordinary and compelling reasons warrant such a reduction;* . . .
>
> \*\*\*\*\*
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]*

18 U.S.C. § 3582(c)(1)(A) (emphasis added). Thus, the statutory requirements for sentence reduction are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure any reduction is consistent with applicable policy statements.

The compassionate release statute previously permitted sentence reductions only upon motion of the Director of the Bureau of Prisons. But Congress expanded the statute in the First Step Act of 2018. Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (Dec. 21, 2018). As amended, § 3582(c)(1)(A)(i), now permits courts

to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" Accordingly, "while the First Step Act did preserve the BOP's role relative to a sentence reduction in certain limited respects, it eliminated the BOP Director's role as the *exclusive* channel through which a sentence reduction could be considered by courts." *United States v. Redd*, No. 1:97-CR-00006-AJT, 2020 WL 1248493, at *7 (E.D. Va. Mar. 16, 2020).

### C. Macias has satisfied the "exhaustion" requirement in 18 U.S.C. § 3582(c)(1)(A).

On July 15, 2020, Macias submitted an administrative request for transfer to home confinement and "compassionate release" under § 3582(c)(1)(A) to the FCC Lompoc Warden. Docket 268, Exh. 3, at 26 of 33  To date, he has not received a response. Because 30 days has elapsed since Macias submitted his § 3582(c)(1)(A) request to the Warden, he has satisfied any "exhaustion" requirement in § 3582(c)(1)(A).[1]

### D. The Court has authority to find extraordinary and compelling reasons other than those expressly identified in the commentary to U.S.S.G. § 1B1.13.

In 28 U.S.C. § 994(t), Congress delegated to the Sentencing Commission authority to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." The policy statement issued in exercise of that authority,

---

[1]  Even if he had not, the "exhaustion" requirement in § 3582(c)(1)(A) is a non-jurisdictional, claim processing rule for the reasons set forth in Judge Rakoff's opinion in *United States v. Haney,* No. 19-CR-0541 (JSR), 2020 U.S. Dist. Lexis 63971, at ** 4-12 (S.D. N.Y. Apr. 13, 2020). As a result, it should be excused or waived due to the deadly COVID-19 outbreak at the Lompoc prison complex. *Id.* at *4.

U.S.S.G. § 1B1.13, provides examples of "extraordinary and compelling reasons" in the application notes. The examples generally fall into four categories based on a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, or (4) compelling family circumstances. U.S.S.G. § 1B1.13 comment. n.1(A)-(C). The commentary also includes a fifth catch-all provision for "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)" as determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13, comment. n.1(D).

However, the policy statement was last amended in November 2018, before the First Step Act was passed, and it still requires a motion filed by the BOP. For that reason, "a growing number of district courts have concluded the Commission lacks" a policy statement applicable to the post-First Step Act statute. *United States v. Mondaca*, No. 89-CR-0655 DMS, 2020 WL 1029024 (S.D. Cal. Mar. 3, 2020) (internal quotation marks omitted); *see also United States v. Brown*, 411 F. Supp. 3d 446, 449-50 (S.D. Iowa 2019) (citing cases).

In *United States v. Cantu*, the court explained:
> Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the *appropriate use* of sentence-modification provisions under § 3582.

No. 1:05-CR-458-1, 2019 WL 2498923, at *4 (S.D. Tex. June 17, 2019) (emphasis in original).

Similarly, in *United States v. Redd*, the court noted that § 1B1.13 "by its terms applies only to motions for compassionate release filed by the BOP Director, not motions filed by defendants." No. 1:97-CR-0006-AJT, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020). Therefore, "there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable

5

policy statement.'" *Id.*; *see also United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *2-3 (D. Utah Feb. 18, 2020) (noting that "a majority of district courts to consider the question have embraced Mr. Maumau's position" that limiting the catch-all provision to circumstances identified by the BOP is inconsistent with the law) (citing ten other cases).

Although the Ninth Circuit has not yet decided this issue, the Second Circuit in *United States v. Booker*—the only circuit to address the issue--recently held that U.S.S.G. § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants." No. 19-3218, 2020 U.S. App. Lexis 30605, at *17 (2d Cir. Sept. 25, 2020). As a result, "Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* Thus, "the First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at *20.

The compassionate release statute does not expressly define or limit what constitutes an "extraordinary and compelling" reason for a sentence reduction.[2]

> It bears remembering that compassionate release is a misnomer. 18 U.S.C. § 3582(c)(1)(A) in facts speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place. *Id.* Beyond this, a district court's discretion in this area—as in all sentencing matters—is broad. *See United States v. Cavera,* 550 F.3d 180, 188 (2d Cir. 2008) (en banc) (noting a district court's "very wide latitude" in sentencing). The only statutory limit on what a court may consider to be extraordinary and compelling is that "[r]ehabilitation *alone* shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t) (emphasis added).

*Id.* at *22 (footnote omitted). Accordingly, this Court has authority to consider whether Macias's high-risk medical conditions and the COVID-19 outbreak at USP Lompoc, combined with the other relevant circumstances in this case, present an

---

[2] Black's Law Dictionary defines "extraordinary" as "[b]eyond what is usual, customary, regular, or common," BLACK'S LAW DICTIONARY (11th ed. 2019). Its definition of "compelling need," is one "so great that irreparable harm or injustice would result if [the relief] is not [granted]." *Id.*

6

extraordinary and compelling basis for a sentence reduction, regardless of whether it falls within one of the existing categories in the § 1B1.13 commentary.

### E. COVID-19 and its deadly outbreak at Lompoc prison constitute an unprecedented health emergency that presents a serious risk of severe illness or death to vulnerable prisoners like Macias.

"COVID-19 is a serious disease" that makes certain persons severely ill and can lead to death.  Exh. 9, Declaration of Chris Beyrer, MD, MPH, Professor of Epidemiology, Johns Hopkins Bloomberg School of Public Health, ¶ 5 (Mar. 16, 2020).  The current best estimate is that the fatality rate among all demographics "is 5-35 times the fatality associated with influenza infection." *Id.*, Beyrer Dec. ¶ 5.

COVID-19 is spreading rapidly in federal prisons.  Macias is incarcerated in USP Lompoc in a double-cell with another inmate without a mask or the ability to maintain social distancing.  Pro Se Motion, docket 268, at 18-19.  Conditions of imprisonment create the ideal environment for the transmission of contagious diseases.  Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 CLINICAL INFECTIOUS DISEASES 1047, 1047 (2007), https://doi.org/10.1086/521910. "Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced." Centers for Disease Control and Prevention (CDC), *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities* (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.  Hand sanitizer, an effective disinfectant recommended by the CDC to reduce transmission rates, is contraband in jails and prisons because of its alcohol content.  Keri Blakinger & Beth Schwarzapfel, *How Can Prisons Contain Coronavirus When Purell is a Contraband?*, ABA JOURNAL (Mar. 13, 2020).  As a Bureau of Prisons inmate, it is impossible for Macias to follow the CDC's recommendations to protect himself from exposure to this highly-transmissible disease.

As of October 27, 2020, there are 2,003 federal inmates and 873 BOP staff who are currently confirmed positive for COVID-19 (and 15,237 more inmates and 1,323 more staff who are deemed recovered), 129 inmate and two staff deaths attributable to COVID-19 nationwide, and a vast outbreak at the Lompoc prison complex. *See* https://www.bop.gov/coronavirus/index.jsp. "The situation at Lompoc has drawn national media attention, and California's two United States Senators have repeatedly called on the BOP to take additional emergency measures to slow the spread of the virus at the facility." *United States v. Robinson,* No. 18-CR-0597-RS, 2020 U.S. Dist. Lexis 73575, at *6 (N.D. Cal. Apr. 27, 2020).

According to a class action complaint, the BOP "is mismanaging one of the worst public health catastrophes related to COVID-19 anywhere in the country – and at the epicenter of the outbreak are FCI Lompoc and USP Lompoc (collectively "Lompoc"), where more than 1,000 incarcerated persons have tested positive for COVID." *Torres v. Milusnic*, C.D. Cal. 2:20-CV-04450 (May 16, 2020), Complaint, Dkt. entry 1, at ¶1. It is impossible for Lompoc inmates to take standard precautionary methods to prevent infection as they are confined in close quarters without freedom of movement and don't have ready access to hand sanitizers and soap. *See Torres* Complaint, at 25, ¶54; *see also United States v. Beauchamp,* No. 1:11-CR-0384-LJO-BAM, Dkt. Entry 149-24, at 2 (E.D. Cal. Sept. 1, 2020 ("It is absolutely impossible for me to safely 'social distance' myself from other inmates or staff members here at USP Lompoc due to the facility design/construct, current overcrowding/excess population, and local policy and COVID-19 programming requirements, all of which prevent me from mitigating my risk and potential exposure to the COVID-19 virus") (Declaration of Eric Beauchamp).

Indeed, the Office of Inspector General's July 2020 Pandemic Response Report of its "Remote Inspection of Federal Correctional Complex Lompoc" found

a number of substantial deficiencies as to how the prison administration and staff has handled its response to the spread of COVID-19 there.  Exhibit 11.

> As this Court has summarized:
>
> A recent Inspector General's report on the situation at the facility states, "despite FCC Lompoc's efforts, the infrastructure may have limited its ability to implement the CDC's social distancing guidelines. FCC Lompoc has open bar cells (as opposed to solid doors), and inmates congregate in common areas, which can facilitate rapid community spread." Department of Justice Office of the Inspector General, *Pandemic Response Report July 2020, Remote Inspection of Federal Correctional Complex Lompoc,* Report 20-086 (July 23, 2020) . . . At bottom, even the government's measures designed to protect inmates at USP Lompoc cannot meaningfully mitigate their consistent proximity to one another, the most basic of risk factors in an infectious environment particularly when the source of infection is COVID-19.

*United States v. Schweder,* No. 2:11-CR-00449-KJM, 2020 U.S. Dist. Lexis 161708, at *14-15 (E.D. Cal. Sept. 3, 2020) (Mueller, D.J.); *see also United States v. Shehee,* No. 4:18-CR-6005-SMJ, 2020 U.S. Dist. Lexis 16208, at *6 (E.D. Wash. Sept. 1, 2020) (citing Inspector General's report and finding that "risk is even further magnified for Defendant because COVID-19 is so rampant at FCC Lompoc").

As a result, numerous courts have granted compassionate release motions for inmates at the Lompoc prison complex due to the dangerously unsafe conditions there.  *See United States v. Hatcher,* No. 92-CR-0001-CRB, 2020 U.S. Dist. Lexis 161504 (N.D. Cal. Sept. 3, 2020); *United States v. Van Praagh,* No. 1:14-CR-0189-PAC, 2020 U.S. Dist. Lexis 121570 (S.D. N.Y. July 10, 2020); *United States v. Stacker,* No. 6:17-CR-0007-AA, 2020 U.S. Dist. Lexis 120144 (D. Or. July 9, 2020); *United States v. Seals,* No. 13-CR-0653-SOM, 2020 U.S. Dist. Lexis 114885 (D. Haw. July 1, 2020); *United States v. Schaffer,* No. 13-CR-0220-MMC, 2020 U.S. Dist. Lexis 110757 (N.D. Cal. June 24, 2020); *United States v. Liew,* No. 11-CR-00573-JSW, 2020 U.S. Dist. Lexis. 10415 (N.D. Cal. June 15, 2020); *United*

*States v. Head,* No. 2:08-CR-0093-KJM, 2020 U.S. Dist. Lexis 104170 (E.D. Cal. June 15, 2020).

Fortunately, Macias has not yet tested positive for COVID-19. Nonetheless, he is at *high risk* for more severe complications from COVID-19 due to his obesity, asthma, and hypertension. Exh. 7. Although the evidence is limited and still evolving, the CDC and other medical authorities have clarified that COVID-19 is especially dangerous for persons with certain severe chronic medical conditions who are especially vulnerable to and at higher risk for serious complications (including death), such as pneumonia and acute respiratory disease, from COVID-19. *See* CDC, *COVID-19: People at Increased Risk, People with Medical Conditions* (updated Oct. 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The CDC warn that "[h]aving obesity, defined as a body mass index (BMI) of 30 or above, increases your risk of severe illness from Covid-19." *Id.*; *Macias* is 5'8" and weighs 204 pounds. Exh. 7, at BOP 6 (204 lbs on 8/28/10); PSR 3 (5'8"). According to the CDC's BMI calculator, Macias qualifies as obese because his BMI is 31. He thus is at increased risk of severe illness should he contract COVID-19. *See* Exh. 10, 4/12/20, "Largest US Study of COVID-19 finds obesity the single biggest 'chronic' factor in New York City's hospitalizations."

Macias also has a long history of severe asthma and the BOP has prescribed him Albuterol and Mometasone inhalers. Exh. 7, at BOP 30; *see id.* at BOP 7, 106, 140. He uses the Albuterol inhaler daily. Exh. 7, at BOP 30. His mother reported that he has had asthma since he was nine months old and has been hospitalized several times because of it. PSR, ¶ 70; Exh. 12; Exh. 7, at BOP 116, 150. According to the CDC website, moderate or severe asthma is another condition that may increase one's risk for severe illness from Covid-19.

Courts have found that an inmate's asthma alone may present a sufficiently severe, high risk factor to warrant compassionate release in light of the COVID-19 pandemic. *See, e.g., United States v. Gorai,* No. 2:18-CR-220-JCM, 2020 WL 1975372, at *3 (D. Nev. Apr. 24, 2020) ("defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19); *United States Norris,* No. 3:18-cr-243, 2020 U.S. Dist. Lexis 70219, at *3 (D. Conn. Apr. 16, 2020) (granting reduction where only risk factor identified was asthma: "[Defendant] suffers from an asthma and uses an Albuterol inhaler to treat his symptoms"); *United States v. Wen,* No. 6:17-CR-6173 EAW, 2020 U.S. Dist. Lexis 64395 (W.D. N.Y. Apr. 13, 2020 (granting reduction for 48-year old defendant where only risk factor was history of asthma; noting only *possible* positive case at institution).

Macias has also been diagnosed with hypertension, for which he is being treated with medication. PSR, ¶ 70; Exh. 7, at BOP 5, 7, 102, 106, 112. Beyond the usual worrisome dangers of high blood pressure, the CDC and "the majority of credible data and research suggests that hypertension puts patients at a higher risk of becoming ill with COVID-19, experiencing severe symptoms, being hospitalized and/or dying." *United States v. Goins,* No. 11-CR-20376, 2020 U.S. Dist. Lexis 100358, at *13 (E.D. Mich. June 9, 2020)) (quoting Aff. Of Epidemiologist Katie Lin Brasher-Beaudry ¶ 2, *United States v. White,* No. 13-CR-20653, 2020 U.S. Dist. Lexis 88542, at *13 (E.D. Mich. May 20, 2020)).

Significantly, it is this combination of high-risk factors that makes potential complications from COVID-19 a great danger to Macias and others like him. *See, e.g., United States v. Bradley,* No. 2:14-CR-0293-KJM, 2020 U.S. Dist. Lexis 119962, at *9 (E.D. Cal. July 7, 2020) ("Defendant also argues persuasively that it is not any of one these conditions alone that create a greater risk of suffering severe illness from COVID-19; instead it is the 'particular danger' he faces given his

combined conditions of diabetes, hypertension, and asthma."); *United States v. White,* No. 13-CR-20653, 2020 U.S. Dist. Lexis 88542, at *13 (E.D. Mich. May 20, 2020) ("Having two chronic conditions, such as obesity and hypertension, puts you at increased risk for severe illness from COVID-19 compared to only having one."). For these reasons, the serious risk that Macias suffers severe illness or death from the outbreak of COVID-19 at the Lompoc prison presents extraordinary and compelling reasons that warrant a reduction in his sentence to time served.

### F. Courts responding to the Coronavirus pandemic have recognized the critical importance of reducing incarceration.

Because of the dangers of COVID-19, the public health community is insistent on the critical need to rapidly reduce our prison populations, both for the health of our inmates and the health of the community as a whole:

> It is . . . an urgent priority in this time of national public health emergency to reduce the number of persons in detention as quickly as possible . . . Releasing as many inmates as possible is important to protect the health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole.

Exh. 9, Beyrer Decl., ¶¶ 17, 19.

Section 3582(c)(1)(A) permits a district court to add a period of home confinement as a condition of supervised release up to the amount the term of imprisonment is reduced. Given the need to protect the health of inmates, staff, and health care workers, a growing number of district courts have responded to the COVID-19 pandemic by granting § 3582(c)(1)(A) motions to reduce sentence so that defendants can continued their sentences in home confinement rather than risk a greater spread of the virus to other inmates and staff. *See, e.g., United States v. Colvin,* 2020 U.S. Dist. Lexis 57962, 10 (D. Conn. Apr. 2, 2020) ("In light of the expectation that the COVID-19 pandemic will continue to grow and spread over the next several weeks, the Court concludes the risks faced by Defendant will be minimized by her immediate release to home, where she will quarantine herself."); *United States v. Harris*, No. 19-cr-00356-RDM (D.D.C. Mar. 26, 2020), ECF No.

12

35 ("The Court is convinced that incarcerating Defendant while the current COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions."); *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *United States v. Trent,* No. 16-CR-00178-CRB, 2020 U.S. Dist. Lexis 62790, at *5 (N.D. Cal. Apr. 9, 2020); *see also* Exh. 9, at 3 (Beyrer Decl., ¶ 19 ("Releasing as many inmates as possible is important to protect the health of inmates, the health of correctional facility staff, the health of health care workers at jails and other detention facilities, and the health of the community as a whole.").

### G. Reducing Macias's sentence to time served is consistent with all the sentencing factors set forth in 18 U.S.C. § 3553(a) given his high-risk medical conditions, and the spread of COVID-19 at the Lompoc prison complex.

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the more than five years of actual imprisonment that Macias has already served is sufficient to satisfy the purposes of sentencing. Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is the spread of COVID-19 and the grave danger it poses to inmates and staff of suffering serious illness or death from its complications. The sentencing purpose of just punishment does not warrant a sentence that includes a serious risk of a life-threatening illness. *See United States v. Zukerman,* No. 16 Cr. 194 (AT), 2020 U.S. Dist. Lexis 59588, at ** 15-16 (S.D. N.Y. Apr. 3, 2020) (Although "the severity of Zukerman's conduct remains unchanged, . . . [w]hen the Court sentenced Zukerman, the Court did not intend for

13

that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic.").

At sentencing, the district court adopted the presentence report's calculations and found the guideline range to be 130-162 months and, following the government's recommendation, sentenced Macias to the middle of the range, or 146 months imprisonment. Docket 227, RT, Sent, at 19-21. His co-defendant received only a 48-month sentence, so a sentence reduction would not create unwarranted sentencing disparity. 18 U.S.C. § 3553(a)(6). Macias is now 42 and has been in custody since June 2015. He thus has served more than five years in actual custody and, with good time credits, over 50% of his sentence.

Macias's recent conduct has been good in prison, docket 268, at 28 of 33 ("No incidents"), he has a release plan, and at this point he poses little, if any, danger when released from custody to supervised release. U.S.S.G. § 1B1.13. Macias can reside and quarantine, if necessary, by himself at the vacant Citrus Heights duplex his mother owns or, alternatively, with his mother in the 5-bedroom Roseville home she shares with her father and two grandchildren. Exh. 12. Macias's mother and grandfather are also willing to assist him financially until he obtains lawful employment. Once released, he will be subject to the supervision of the U.S. Probation Office for five years and will be subject to a warrantless search condition. The totality of the circumstances demonstrates that reducing Macias's sentence to time served (with an additional period of home confinement during his term of supervised release if the Court deems appropriate), is "sufficient, but not greater than necessary, to comply with" all the purposes of sentencing under § 3553(a).

## III. Conclusion

For these reasons, the Court should reduce defendant Benjamin Macias's sentence to time served under 18 U.S.C. § 3582(c)(1)(A), with an additional period of home confinement as a condition of supervised release if the Court deems it appropriate.

Dated: October 27, 2020

Respectfully submitted,

/s/ John Balazs
JOHN BALAZS

Attorney for Defendant
BENJAMIN MACIAS