UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America, | No. 2:15-CR-00125-KJM |
| Plaintiff, | ORDER |
| v. | |
| Benjamin Macias, | |
| Defendant. | |

Defendant Benjamin Macias filed a motion to reduce his sentence to time served under 18 U.S.C. § 3582. Mr. Macias argues he presents "extraordinary and compelling circumstances" for release given his hypertension, asthma and obesity in connection with his risk of infection of COVID-19 at the federal Lompoc prison complex. Defendant's motion is **granted.**

**I.     BACKGROUND**

Mr. Macias was found guilty of conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (count 1), four counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) (counts 4–7), possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) (count 8), and being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (count 10). Verdict Form, ECF No. 207. The previously assigned district judge sentenced defendant to 146 months imprisonment and 60 months of supervised release. Suppl. Br. at 2, ECF No. 272.

Medical records indicate Mr. Macias is obese and suffers from essential hypertension and asthma. Medical Records at 5–7 (under seal).[1] He is assigned to USP Lompoc, which along with FCI Lompoc makes up the Federal Correctional Complex Lompoc ("FCC Lompoc"), Suppl. Br. at 2, and has completed about 44.5 percent of his sentence with application of his good time credits, Opp'n at 17, ECF No. 274.

Mr. Macias filed a pro se motion for compassionate release, Mot., ECF No. 268, and this court then appointed counsel. Minute Order, ECF No. 269; Suppl. Br., ECF No. 272. The government opposes his early release. Opp'n, ECF No. 274. Defendant replied. Reply, ECF No. 277

## II.   LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.[2] Under the statute, a court may grant a defendant's motion to reduce his prison term, provided the defendant first satisfies an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A), 3582(c)(1)(A)(i). Once the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody. 18 U.S.C. § 3582(c)(1)(A). Second, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. *Id*.

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended

---

[1] The court grants Mr. Macias's requests to file exhibit 7 (defendant's medical records) under seal to protect defendant's private medical information. *See Chester v. King*, No. 1:16-01257, 2019 WL 5420213, at *2, 2019 U.S. Dist. LEXIS 154413, at *5 (E.D. Cal. Oct. 23, 2019) ("This court, and others within the Ninth Circuit, have recognized that the need to protect medical privacy qualifies as a 'compelling reason' for sealing records.").

[2] Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).

November 1, 2018.  *See* U.S.S.G. § 1B1.13.  Since the passage of the First Step Act, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding.  This court, as it has in previous cases, considers the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context.  The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 16-00025, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

### III.   ANALYSIS

#### A.   Exhaustion

The government originally argued Mr. Macias failed to exhaust his administrative remedies.  Opp'n at 8–9.  But Mr. Macias replied with an email dated October 16, 2020 to the Lompoc warden in which Mr. Macias requested compassionate release.  Reply Ex. 13, ECF No. 277-1.  The government subsequently withdrew its exhaustion argument.  Surreply, ECF No. 280.  Accordingly, the court finds the exhaustion requirement is met.

#### B.   **Extraordinary and Compelling Reasons**

##### 1.   **Medical Conditions**

Mr. Macias argues he is entitled to compassionate release given his risk of experiencing serious COVID-19 symptoms due to his essential hypertension, asthma and obesity.  Suppl. Br. at 1.  Essential hypertension is high blood pressure "without known cause."  *Essential Hypertension*, Stedmans Medical Dictionary.  The government argues his hypertension and asthma, which is not classified as moderate or severe, are insufficient to show Mr. Macias is at a higher risk for COVID-19 complications.  *See* Opp'n at 12–13.  At the same time, the government concedes he is "technical[ly] eligibl[e]" for release based on his obesity.  Opp'n at 14.

District courts including this one have found comorbidities, like asthma, obesity and hypertension, are medical conditions that increase the risk of severe illness from COVID-19 warranting compassionate release.  *United States v. Fernandez*, No. 2:16-00115, 2020 WL 5909490, at *5 (E.D. Cal. Oct. 6, 2020); *United States v. Richardson*, No. 17-00048,

3

2020 U.S. Dist. LEXIS 108043, at *8 (E.D. Cal. June 19, 2020) ("Defendant's hypertension alone places him at significant risk of complications."); s*ee, e.g., United States v. Rodriguez*, 476 F. Supp. 3d 1071, 1075 (S.D. Cal. 2020) (granting motion for compassionate release for petitioner suffering from asthma and obesity).

The court recognizes there may be some doubt whether Mr. Macias's essential hypertension would be able to support his release, standing on its own. *United States v. Thomas*, 471 F. Supp. 3d 745, 749 (W.D. Va. 2020) ("During the pandemic, courts in this district and across the country have released individuals suffering from hypertension, but only when these individuals also suffered from other underlying medical conditions."); *United States v. Brown*, No. 3:13-14, 2020 WL 3511584, at *6 (E.D. Tenn. June 29, 2020) ("the CDC only identifies pulmonary hypertension, not essential hypertension, from which defendant suffers [ ], as increasing the risk for severe COVID-19 infection."). But given that his "obesity alone" places Mr. Macias "at higher risk of COVID-19 complications," *Richardson*, 2020 U.S. Dist. LEXIS 108043, at *8; CDC, *People with Certain Medical Conditions*, (accessed Dec. 21, 2020)[3] the court finds Mr. Macias's combination of medical conditions weighs in favor of his release.

## 2. Conditions at Lompoc

As this court has had occasion to observe on numerous occasions, the coronavirus outbreak at FCI Lompoc, the other facility at Lompoc, was one of the worst in the nation. *See, e.g.*, *United States v. Robinson*, ___ F. Supp. 3d ___, 2020 WL 1982872, at *1 (N.D. Cal. Apr. 27, 2020); *United States v. Curtiss*, 467 F. Supp. 3d 96 (W.D.N.Y. 2020); *United States v. Purry*, No. 14-00332, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020). In resolving motions for compassionate release during the ongoing pandemic, this court has looked at the data for both FCI and USP Lompoc given the interconnection of the facilities as two halves of the larger Lompoc complex. *See, e.g., United States v. Pickard*, No. 2:11-00449, 2020 WL 4227510, at *4 (E.D. Cal. July 23, 2020) (considering declaration from former BOP attorney at Lompoc complex who noted "in her experience, [USP Lompoc] is not self-sufficient, and relies on services shared

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html#obesity.

4

throughout the complex, making it impossible to restrict access or travel between the institutions") (citing Klein Decl. ¶ 5., ECF No. 721-1).  Currently, USP Lompoc where Mr. Macias is housed is reporting two cases among its incarcerated population and four confirmed cases among the staff.  BOP, *COVID-19 Cases* (updated daily) (accessed March 8, 2021).[4]  Previously, this court had expressed skepticism regarding the measures taken at Lompoc and the active case reporting in mid-2020 "suggest[ing] that more than 900 active infections were resolved within two weeks."  *Pickard*, 2020 WL 4227510, at *4; *United States v. Schweder*, No. 2:11-00449, 2020 WL 5257598, at *5 (E.D. Cal. Sept. 3, 2020) (same; collecting cases).  The court's skepticism was based in part on conflicting reports of the measures being taken at the complex.  *Schweder*, 2020 WL 5257598, at *5; *see* Dep't of Justice, *Pandemic Response Report* (accessed Jan. 26, 2021) (documenting shortage of medical staff at FCI and USP Lompoc and ineffective COVID-19 screening and isolation process at both facilities).[5]  In its current filing here, the government attempts to combat these concerns with reference to protective measures BOP is taking generally, with little reference to the efforts at the Lompoc complex specifically.  Opp'n at 4–5.  The government does point to a declaration by a Health Services Administrator for FCC Lompoc[6] that the government submitted in connection with a separate case, *see* Opp'n at 5; but this declaration predates the information the court relied on in mid-2020.  While the court remains open to considering updated information that details the current status of infection prevention, control and reporting at the Lompoc complex, the information the government provides here does not alleviate the court's concerns.  On this record, Mr. Macias's placement also provides compelling reasons weighing in favor of his release.

    **C.**    **Sentencing Guidelines**

The Sentencing Guidelines instruct "the [c]ourt should consider the sentencing factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and the [c]ourt

---

[4] https://www.bop.gov/coronavirus/index.jsp.

[5] *Remote Inspection of Federal Correctional Complex Lompoc*, issued July 23, 2020. https://oig.justice.gov/reports/remote-inspection-federal-correctional-complex-lompoc.

[6] *United States v. Eddings*, No. 2:09-00074.  *See generally* Cross Decl., ECF No. 340-1 (filed May 21, 2020).

5

should not grant a sentence reduction if the defendant poses a risk of danger to the community, as defined in the Bail Reform Act." *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1196 (E.D. Wash. 2020) (citing U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A). "In assessing danger, physical violence is not the only form of danger contemplated by the statute. Danger to the community can be in the form of continued narcotics activity or even encompass pecuniary or economic harm." *United States v. Zaragoza*, No. 08-0083, 2008 WL 686825, at *3 (N.D. Cal. Mar. 11, 2008).

Mr. Macias's conviction offense is a nonviolent one, *United States v. Dailey*, No. 2:13-00118, 2020 WL 4504449, at *4 (E.D. Cal. Aug. 5, 2020), and he has incurred no disciplinary incidents while incarcerated, Suppl. Br. at 14. These factors weigh in favor of his release. But he has an extensive and varied criminal history dating back several decades. Presentence Rep. ("PSR") ¶¶ 43–61, ECF No. 208. His prior crimes include misdemeanor possession of dangerous weapons, misdemeanor carrying a concealed firearm, misdemeanor fighting in public, felony battery with serious bodily injury, felony assault with a deadly weapon, and felony evading a peace officer, all of which weigh against his release. *Id.* ¶¶ 44–49. He has also violated parole on at least three occasions, *id*. ¶¶ 43–44, 48, and joined the Sureños gang as a teenager, *id*. ¶ 64. During his presentence interview before sentencing in this court, Mr. Macias explained he was "'classified on paper' as a gang member, but he has not been an active member." *Id.* He was assaulted by two Sureños members while he was in pre-trial detention in Sacramento County Jail. *Id.* ¶ 6. The government does not argue Mr. Macias's history of gang affiliation is a reason to find he poses a danger to the community. Mr. Macias argues that despite this criminal history, he poses no danger to the community given the constraints of his proposed release plan. Mr. Macias also notes that he has participated in programming and held a full-time job placement while incarcerated, though he does not specify what programming he has completed. Mot. at 7.

Mr. Macias presents two options for his release plan. He will either live alone in a Citrus Heights duplex his mother owns or in a Roseville home with his mother and other family members. Suppl. Br. at 14. His mother and grandfather will support him financially until he is employed. *Id.* The court has conferred with the probation office, which will provide supervision

of Mr. Macias if the court does grant his release. That office has communicated that it finds Mr. Macias's release plan is acceptable if additional conditions are imposed to account for his conviction offense, criminal history and prior gang ties. Those conditions include a period of home detention.

Given the evidence weighing in favor of release, Mr. Macias's good behavior in prison and thorough release plan, and recognizing that much of his most troubling conduct is several decades old, PSR ¶¶ 44–49, 64, the court concludes the record weighs in favor of Mr. Macias release.

### IV.    CONCLUSION

Mr. Macias's motion for compassionate release is **granted.**

The court modifies Mr. Macias's previously imposed sentence of incarceration of 146 months to time served. Mr. Macias's previously imposed conditions of supervised release apply in full, and an additional special condition is imposed requiring Mr. Macias be subject to home detention in the residence approved by his supervising probation officer, with home detention continuing for a period of six (6) months as directed by the probation officer, and Mr. Macias's bearing the cost of location monitoring equipment. Specifically, during the period of home detention, Mr. Macias's movement in the community shall be restricted as follows, with all activities subject to pre-approval by the probation officer: defendant shall be restricted to his residence at all times except for employment, education, religious services, medical, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities as pre-approved by the probation officer.

There being a verified residence and an appropriate release plan in place, this order is stayed for up to seven days for Mr. Macias to make appropriate travel arrangements and for BOP to ensure defendant's safe release. Mr. Macias shall be released as soon as appropriate travel arrangements are made, and it is safe for him to travel. If more than seven days are needed to make appropriate travel arrangements and ensure defendant's safe release, then the parties shall immediately notify the court and show cause why the stay should be extended.

/////

The court orders Mr. Macias to self-isolate for fourteen days in his approved residence once he arrives there, as a means of protecting his health and others while also complying with all applicable public health orders.

Mr. Macias's motion to seal his medical records is **granted.**  The Clerk of Court is directed to filed under seal the records covered by Mr. Macias's motion to seal.

This order resolves ECF Nos. 268 & 273.

IT IS SO ORDERED.

DATED: March 9, 2021.

CHIEF UNITED STATES DISTRICT JUDGE